SAMUEL P. JEWETT, plaintiff in error, *vs.* JOSEPH PETIT *et al.*, defendants in error.

If the acknowledgment of a debt barred by the statute of limitations, or, if a partial payment of it, is accompanied by declarations, or circumstances, which rebut the implication of a promise of payment, or that the debtor, by the partial payment ;admitted his obligation to pay the residue, the claim is not revived.

One who has been induced, by the fraudulent representations of another, to enter into a contract, may affirm, or disaffirm it, on discovery of the fraud; but he cannot do both, and he must affirm, or disaffirm altogether; and, if the latter, must do so as soon as the fraud is discovered. He cannot adopt that part which is for his own interest, and reject the residue.

Where a creditor is induced, by the fraudulent representations of his debtor, to compromise, and receives part of his demand, he cannot, on discovery of the fraud, retain the sum paid, and sue in assumpsit for the balance; but he may retain the payment, and maintain an action on the case for damages sustained by the fraud.

Error to Washtenaw Circuit.

*Seaman & Root*, for plaintiff in error.

*H. J. Beakes*, for defendants in error.

The facts are all stated in the opinion of the Court.

By the Court, DOUGLASS, J.

This was an action of assumpsit, brought by Petit & Davis against Jewett. It was commenced on the 2d of May, 1854.

The declaration counts upon three several promissory notes, made by the defendant, all dated prior to February 26, 1847, and payable on demand with interest, to the order of the plaintiffs, amounting in the aggregate, exclusive of interest, to $996.97.

There is also a fourth count in the declaration, averring, in substance, that on the 20th day of June, 1848, the plaintiffs were the holders of three certain promissory notes of the defendant (which are set forth and appear to be the same notes described in the three first counts); that these notes were then due and unpaid; that the defendant represented that he was insolvent, and unable to pay them; that thereupon, a compromise was entered into between the plaintiffs and the defendant, in virtue of which the plaintiffs delivered up to the defendant his said promissory notes as canceled, on receiving from him fifty per cent. of the amount thereof, in demands against different persons, and on his promise to pay the residue of the amount unpaid on said notes whenever he should become able, and that the defendant was of sufficient ability to pay the same.

The defendant plead the general issue, accompanied with a notice of defence under the statute of limitations.

On the trial the plaintiffs proved the notes described in the declaration, and also, the facts averred In the fourth count, in respect to the compromise of these notes, except the promise of the defendant there alleged, to pay the residue of the notes as soon as he was able; as to which the evidence was doubtful. Considerable evidence was also adduced on the part of the plaintiffs, tending to prove that the representations made by the defendant at the time of the compromise, and which induced the plaintiffs to enter into it, were false and fraudulent; and that the defendant then was, and ever since had been, of sufficient ability to pay all his debts.

The evidence having been closed, the Court below, in substance, told the jury, among other things, that if the plaintiffs had been induced by false and fraudulent representations of the defendant, to compromise and deliver up the notes declared upon, on receipt in demands of less than the amount due thereon, they would have a right to treat the compromise as void, and might apply what they had received in virtue of

the compromise as a part payment of the notes, and maintain this action upon the notes to recover the balance thereof which would remain unpaid. They also told the jury, that such part payment would be sufficient to prevent the action upon the notes from being barred by the statute of limitations. To the last proposition embraced in that portion of the charge above quoted, the defendant excepted.

We are clearly of the opinion that this exception was well taken.

The law of limitation is now almost universally conceded to have a twofold foundation ; in the first place, the actual probability that a debt which has not been claimed for a long time was paid, and that this was the reason of the silence of the creditor ; and, in the second place, the inexpediency and injustice of permitting a stale and neglected claim or debt, even if it has not been paid, to be set up and enforced after a long silence and acquiescence. Since the statute of limitation has come to be considered as resting upon the latter foundation as well as the former, and to be a statute of repose as well as a statute of presumption, the uniform doctrine has been, that it remains in force, unless the debtor renounces its benefit and protection, and voluntarily makes a new promise to pay the old debt. Such new promise will be implied from the mere acknowledgment of the debt expressed by such words, and attended with such circumstances, as give it the meaning, and, therefore, the force and effect of a new promise. But if the acknowledgment be attended by any qualification, tending to rebut the implication of a promise of payment which would otherwise arise, there can be no recovery. Part payment of a debt also, is an admission of its existence as a subsisting obligation, which the party is liable and willing to pay, from which, if nothing else appears, a promise to pay will be inferred ; and it is upon this ground that it prevents the bar of the statute. But it is well settled, that if the part payment is accompanied by any circumstances or declara-

tions of a nature to rebut the inference, which would otherwise be drawn from it, that the debtor admits, and is willing to fulfill his obligation to pay the residue of the debt, it will be of no avail. "If," says Mr. Parsons (*Pars. Merc. Law,* 329), "it is made in settlement of the whole, of course it is no promise of more." (*Wainman* vs. *Kinman,* 1 *Exch.,* 118; *Simell* vs. *Bonner,* 2 *Bing. N. C.,* 24; *Waters* vs. *Tompkins,* 2 *Cr. M. & R.,* 722, 726; *Bateman* vs. *Pindar,* 3 *Ad. & El.,* 574, *Am. Note to Whitcomb* vs. *Whiting,* 1 *Smith Lead. Cas.;* 2 *Greenl. Ev.,* 442, 443, 444; 2 *Pars. Conts.,* 343; *Pars. Merc. Law,* 235, 239.)

Now, the payment in this case, which the jury were instructed was sufficient to prevent the action upon the defendants' notes from being barred by the statute of limitations, was a payment of part of the amount due upon the notes as a compromise and satisfaction of the whole. Its character as a payment as and for a satisfaction, is not changed by the disaffirmance of the compromise on the ground of fraud, although in consequence of the disaffirmance, it may not have the effect intended by the defendant. From such a part payment, of course no promise to pay the residue can be implied, and, therefore, it cannot operate to prevent the bar of the statute of limitations.

We might safely rest the decision of the present case upon this ground alone, but a recurrence to certain elementary principles, which seem to have been overlooked, will show that the error involved in the charge of the Court lies much deeper than the views above expressed would indicate. It will also disclose some other errors in the proceeding in this cause which have not been noticed, and to which it may be proper to call attention, if there is to be a new trial.

One who has been induced to enter into a contract by the fraudulent representation of the other party, may, on discovery of the fraud, disaffirm the contract. He has his election in the first instance; but it is well settled that he

cannot do both. The assertion of the right to affirm, is a renunciation of the right to disaffirm, and *vice versa*. This is well illustrated in the case of Butler *vs.* Hildreth (5 *Metc.*, 49). There, an assignee of an insolvent debtor, having a right either to affirm or disaffirm a sale of goods by the insolvent, on the ground that it was fraudulent as against creditors, with knowledge of all the facts, had brought an action against the vendee, on a note given by him for the price of the goods, and secured the demand by an attachment upon his property, and it was held that by so doing he had affirmed the sale and had waived his right to disaffirm it, and that he could not, by discontinuing that action and demanding the goods, entitle himself to maintain an action of trover against the vendee on his refusal to return them. Brewster *vs.* Sparrow (7 *B. & Cr.*, 195), also affirms and illustrates the same principle, although not a case of contract. There, the assignees of a bankrupt brought trover for chattels of the bankrupt of which the defendant had taken possession. The chattels were part of the bankrupt's stock in trade which, on the bankrupt's absconding, the defendant had taken possession of, and carried on the trade. He had, however, rendered to the assignees a fair account, and paid over the balance. " The defendant," said Bayley, J., " in the first instance was a wrong-doer, and the plaintiffs might have treated him as such. But it was competent for them in their character of assignees, either to treat him as a wrong-doer and disaffirm his acts, or to affirm his acts and treat him as their agent ; and if they have once affirmed his acts, and treated him as their agent, they cannot afterwards treat him as a wrong-doer ; nor can they affirm his acts in part, and avoid them as to the rest. By accepting and retaining the balance, without objection, they affirmed and recognized his acts ; and having done so, they are not at liberty to treat him as a wrong-doer." See also Campbell *vs.* Fleming, 1 Ad. & El., 40; Mason *vs.* Bovet, 1 Denio, 74, *per* Beardsley, J.; Galloway *vs.* Holmes, 1 Doug. Mich.

R., 330; Smith *vs.* Hodson, and notes 2 Smith's Lead. Ca. 81, *et seq.*, Pars. Merc. Law, 56.

Upon these principles then, there is a misjoinder of counts in the declaration in this cause, which would have been fatal to the action, if availed of in any stage of the proceedings, and this error seems to have been the principal source of the confusion which seems to have prevailed on the trial. The first three counts are upon the defendant's promissory notes, upon which a recovery is claimed on the ground that the compromise, in virtue of which they were delivered up to the defendant as paid, was void for fraud. These counts, then, disaffirm the compromise. The fourth count is upon the compromise, and claims to recover upon an alleged promise of the defendant, which constituted a part of it. It, therefore, affirms the compromise. Clearly it is not competent for a party thus both to affirm and to disaffirm in the same transaction, almost in the same breath.

But to return from this digression. The authorities last cited show also, that one who has his election whether he will affirm a particular contract, must elect either to affirm or disaffirm it altogether. He cannot adopt that part which is for his own benefit, and reject the rest. If he elects to disaffirm on the ground of fraud, he must do so as soon as the fraud is discovered, and must restore the other party so far as it then can be done, to the same situation he would have been in, if the contract had never been made. (2 *Pars. Cont.*, 277, *and cases there cited.*) In Pierce *vs.* Wood (3 *Fost.*, 520), it was held that this rule was inapplicable to the case of the compromise of a debt on receiving a per centage thereon, and that if the compromise was voidable for fraud of the debtor, the creditor might disaffim it and maintain assumpsit for the balance of the debt without returning what he had received. But I must be permitted to express a doubt whether this decision is in accordance with sound principles. The Court seem to have thought that unless this was so, the

creditor might be compelled to incur the risk of losing what he had received, in order to recover that out of which he had been defrauded. But we think no such consequence would follow. For, if the creditor did not choose to incur the risk, he might affirm the compromise, and maintain an action on the case to recover damages for the fraud. (1 *Smith's Lead. Cas.*, 5 *Am. Ed.*, 253, *and cases there cited; Wilson* vs. *Fuller*, 3 *Ad. & Ell. N. S.*, 68; *Taylor* vs. *Ashton*, 11 *M. & W.*, 401; *Harrington* vs. *Stratton*, 22 *Pick*, 510; *Ward* vs. *Wiman*, 17 *Wend.*, 193.) We can see no good reason for any distinction between a fraudulent compromise and any other fraudulent contract, and if the creditor disaffirms it, we think he must return what he has received under it — if money, the amount paid him — if property, this must be restored likewise, unless it has ceased to exist in specie, or the creditor has parted with it before the fraud was discovered.

If these views are correct, they exhibit the error involved in the charge of the Court in a much stronger light than that in which we have before viewed it. For, the plaintiffs, on disaffirming the compromise, must disaffirm it *in toto*, and could not adopt that part of it which was for their own benefit, and reject the rest. Conceding that they were not bound to return what they had received under it, it is difficult to see upon what principle they could be permitted to avail themselves of anything which constituted an essential part of that transaction, for the purpose of cutting off any defence which the defendant would otherwise have had to an action against him on his notes.

But according to the view of the law above presented, the plaintiffs on disaffirming the compromise were bound to return to the defendant the securities they had received as a satisfaction of the notes, provided those securities still existed, and it was in his power to return them. If they had been collected or disposed of before the fraud of the defendant was discovered, so that they could not be returned, the authorities

would seem to show, that for the sake of attaining justice between the parties as near as might be, the amount of those securities would be applied as a credit upon the defendant's notes. They would thus become a part payment by operation of law, and we need not waste time in showing that this would not be such a part payment as would prevent the notes from being barred by the statute, under any view of the statute which has ever prevailed.

The judgment below must be reversed, with costs of this Court to the plaintiff in error, and a new trial awarded; costs of the Court below to abide the event.

Present, DOUGLASS, WILLSON, GREEN, MARTIN, BACON, and PRATT, J. J.

JOHNSON, J., decided the cause below, and did not participate.