### JOHN H. BOWMAN *v.* FARRAND PARKER.

*Fraudulent Representations. Damages. Sale. Contract. Corporation. Marble Quarry.*

In this suit, which was an action on the case for fraudulent representations in the sale of stock in a corporation, the plaintiff sought to recover what he had paid for the stock, and also certain assessments paid thereon by him, and interest on the same. The county court instructed the jury that "the plaintiff, if entitled to recover at all, was entitled to recover all that he had lost by reason of the fraudulent representations of the defendant in respect to material facts which were alleged and proved; and such paid assessments might be embraced in the damages to be recovered, unless such payments were made after the discovery of the fraud, and that in case the jury should find for the plaintiff, he was entitled to recover, in addition, interest upon what he had paid for the stock and upon what he had paid upon such assessments without knowledge of the fraud." *Held,* that in the above instructions there was error.

*Held,* that the general rule of damages in actions of this character is the difference between the value of the property as it really was at the time of the sale, and what its value would have been had the representation for which the vendor is found liable, been true.

*Held,* that if the defendant is liable for any portion of these assessments, he is only liable for such portion of them as were rendered necessary in consequence of the particular representation or representations for which the jury find him liable, being untrue.

*Held,* that if the defendant was to be made liable on account of what the plaintiff paid on assessments, the question should have been submitted to the jury to find to what extent the necessity for the assessments arose from the falsity of the representations on which they found the defendant liable, and the recovery, in respect to the assessments, limited to that extent.

THIS was an action on the case for certain alleged fraudulent representations in regard to certain stock of the Vermont Marble Company, sold by the defendant to the plaintiff, wherein the plaintiff sought to recover not only what he had paid for the stock, but also all the assessments thereon paid by him, and interest on all said sums. Plea, the general issue, and trial by jury at the March Term, 1864, Rutland county court, KELLOGG, J., presiding.

The request to charge, the charge as given, and all other material facts in the case are stated in the opinion of the court. To the refusal of the court to charge as requested, and to the charge as given, the defendant excepted.

The jury returned a general verdict for the plaintiff.

*Edgerton & Paul* and *Daniel Roberts*, for the defendant.

*Prout & Dunton* and *E. J. Phelps*, for the plaintiff.

The opinion of the court was delivered by

PECK, J. The action is an action on the case in which the plaintiff seeks to recover damages for fraudulent representations of the defendant to the plaintiff, affecting the value of the capital stock of the Vermont Marble Company, at Rutland, one hundred and twenty-five shares of which were sold by the defendant to the plaintiff. Numerous representations of this character are alleged to have been made by the defendant in the course of the sale, some of which the plaintiff's evidence tends to show were fraudulently made. The defendant's evidence tends to show some of these representations were never made, and as to others that they were true, or if not all

true to the full extent, that they were supposed by the defendant to be true at the time of the sale and representation. The exceptions state that it was not claimed by the plaintiff that there was any misrepresentation by the defendant as to what property was embraced in, and represented by the capital stock of the company. The company was a corporation, and the property represented by the stock was a marble quarry, in Rutland, which had been recently opened to a limited extent, and in which some quarrying had been done, commencing in the summer of 1856. This stock was sold to the plaintiff, one hundred shares of it, in the summer of 1858, and the other twenty-five shares in the winter of 1859. The plaintiff was a large stockholder at the time and continued to be till the company failed, and the property was attached by creditors and sold at auction the last of 1860 or forepart of 1861. The corporation was organized in June, 1859, although the defendant had taken out some marble from the quarry previously, as already stated. The plaintiff was a witness in his behalf, and it appears from his testimony that he knew when he purchased the stock that the company's property consisted of the quarry and what pertained to it, and that they had no cash capital to do business upon, and that the company were doing no quarrying then, and not intending to till they had built a mill to saw their marble, and that the defendant told him when he purchased the stock, that the company would have to make assessments upon the stock to build the mill. It appears that immediately after the plaintiff purchased the stock in question he was appointed one of the directors of the corporation, of which the defendant was president and a principal active manager of the business; that the defendant acted as such director during the continuance of the business, during which time, nearly two years, the company built a mill for sawing marble, at an expense of $15,000. or $16,000., bought several thousand dollars worth of real estate, built a store and trimming shop at an expense of $1,000., laid out about $1,500. in erecting platforms for loading marble, and in purchasing teams, &c., and performed dead work upon the quarry to the amount of about $8,000. in extending and widening the opening of the quarry, and carried on the business of quarrying, sawing and selling marble. In doing this, the company, from time

to time, made assessments on the stock, the most of which were paid and expended in the above operations of the company, the plaintiff voting as director for most of these assessments, and paying most of the assessments which were made upon his stock. The testimony of the plaintiff tended to show that it did not come to his knowledge that the defendant's representations were untrue till a short time before the failure of the company. The property of the corporation was sold at auction in 1861, and the avails of the sale were a little less than the amount that the company owed. This general outline of the case, although not full, is sufficient to raise one point in the charge,—to which exception is taken by the defendant.

The defendant requested the court to instruct the jury that the plaintiff could not recover for the assessments levied with the concurrence of the plaintiff as director, and paid by him subsequent to the purchase of the stock, for that such assessments were voluntary on his part, and for that no claim to recover in respect thereto was set forth in the declaration, and that such assessments and payments were not a proper element of the damages to be recovered. This the court declined, and instructed the jury, in reply to this request, that the plaintiff, if entitled to recover at all, was entitled to recover all that he had lost by reason of the fraudulent representations of the defendant in respect to material facts which were alleged and proved, and that such paid assessments might be embraced in the damages to be recovered, unless such payments were made after the discovery of the fraud, and that in case the jury should find for the plaintiff, he was entitled to recover in addition, interest on what he paid for the stock, and upon what he had paid upon such assessments without knowledge of the fraud.

The first proposition involved in the charge on this point, that the plaintiff, if entitled to recover at all, was entitled to recover *all that he had lost* by reason of the fraudulent representations of the defendant in relation to material facts which were alleged and proved, is laid down in more comprehensive terms than is usually adopted in actions for false representations in a sale, and in some cases would, if unexplained, lead a jury to a wrong conclusion. The general rule of damages in actions of this character is, the difference between the

value of the property as it really was at the time of the sale, and what its value would have been had the representation, for which the seller is found liable, been true. Generally the recovery cannot go beyond this and embrace in addition remote damages arising, in part, from the subsequent conduct of the vendee in the use he makes of the property. The cases where such remote damages have been allowed are peculiar and exceptional. But even if the plaintiff might, in one event of the finding of the facts by the jury, recover these assessments, (which we do not decide,) there is error in the subsequent part of the charge in which the jury are allowed to include these assessments in the damages, if the plaintiff recovered, unless paid after knowledge of the fraud. If the defendant is liable for any portion of these assessments, and if the declaration is sufficient to embrace them, (which we do not decide,) he is only liable for such portion of them as were rendered necessary in consequence of the particular representation, or representations, for which the jury find him liable, being untrue. The charge ought to have been thus limited. The court had no right to assume that if the jury found the defendant liable, that they would find him liable on all the representations alleged, and ·that the whole assessments were rendered necessary solely by reason of the representations, on which the jury would find the defendant liable, proving to be false. The evidence in defense tended to show that the years 1859 and 1860 were hard years for the marble trade generally, that on that account few sales could be made ; that in 1860, $15,000. or $20,000. bad debts, accruing in their sales, came back from the southern states protested, and could not be collected. This depression of the market, and loss of debts, and the outlay in purchasing more real estate, and in enlarging and extending the opening of the quarry, with a view to increase their ultimate profits, the benefit of which they had not yet fully realized, may have created the necessity of some of these assessments. It appears from the plaintiff's testimony that he was informed when he purchased the stock, that assessments would be necessary to erect the mill, which the company built. If the defendant was to be made liable for anything on account of what the plaintiff paid on assessments, the question should have been submitted

to the jury to find to what extent the necessity for them arose from the falsity of the representations on which they found the defendant liable, and the recovery in respect to them limited to that extent. In this part of the charge the Judge adds, " that in case the jury should find for the plaintiff, he was entitled to recover, in addition, interest upon what he paid for the stock, and upon what he had paid upon such assessments without knowledge of the fraud." To the extent that the plaintiff was entitled to recover for the assessments, if anything, he was entitled to interest, but not interest on the whole unless he was entitled to recover the whole assessments. The plaintiff was not entitled to recover interest on the price paid for the stock unless he was entitled to recover that price as the basis of, or as included *in*, the damages. The jury must have understood that if the plaintiff recovered at all he was entitled to recover the price of the stock, for they would not be likely to suppose the court intended they should allow the plaintiff interest on a sum, and then exclude that principal sum from the damages. They must have inferred that the sum on which they were directed to cast interest was to be included. If this is not the construction of the charge, it is still error to instruct the jury to allow to the plaintiff interest on the sum paid for the stock, unless the plaintiff is entitled to recover in damages the price paid. There is only one hypothesis upon which the plaintiff would be entitled to recover the price paid, that is, if the jury should find that the stock would have been worth the price the plaintiff paid for it if the representations for which they find the defendant liable had been true, and that in consequence of the falsity of these representations, it was worthless at the time of the purchase. It cannot be assumed that the jury so found. In this unqualified instruction, that if the jury found for the plaintiff he was entitled to recover interest on the price he paid for the stock, there was error.

There are several other questions in the case which have been argued, but we are compelled to leave them undecided.

Judgment reversed and new trial granted.