## M. GRABENHEIMER v. L. & H. BLUM.

(Case No. 1763.)

<div style="float:right">63  369<br>82  177</div>

1. PLEADING — PRAYER IN THE ALTERNATIVE.— The prayer for relief in an original petition was for a balance due on account, as well as for general relief; the prayer in a supplemental petition was in the alternative for the balance due on the account sued for, or for that amount as damages for an alleged fraud. *Held*, that the prayer in the alternative was not subject to demurrer.

2. SAME — SUPPLEMENTAL PETITION.— In a supplemental petition, made necessary by way of replication, to matter contained in the answer, though the original suit be for a balance due on account, the plaintiff may set up and claim damages for fraud.

3. DAMAGES FOR DECEIT.— When a party, after making a contract, but before its performance, discovers the fraud of the other party, and still goes on and performs his part, he is thereby precluded from the equitable remedy of cancellation, and also from the remedy of recovering back the consideration, but not from the legal remedy of damages for the deceit and fraud.

4. ACTION — FRAUD — PLEADING.— Where a creditor is induced by the fraudulent representations of his debtor to compromise, and receives a part of his demand, he cannot, on discovery of the fraud, retain the sum paid, and sue for the balance due as on account or contract; but he may retain the payment and maintain an action on the case for damages sustained by the fraud.

5. DAMAGES.— See opinion for a state of facts on which an attachment issued in a suit to recover damages, which under the state of pleading were regarded as "specific and determinate."

6. MEASURE OF DAMAGES FOR FRAUDULENT CONCEALMENT ON COMPROMISE OF A DEBT.— When a creditor sues to recover damages for fraud, retaining what he has received in the compromise about which the fraud was practiced, he thereby affirms the compromise, and the damages which he is entitled to recover is the amount he would have received had no fraudulent concealment been made. (Following Page *v.* Wells, 37 Mich., 421, and other cases cited in opinion.)

7. SAME.— The damages which a party is entitled to under such circumstances cannot be reduced by deducting losses which the perpetrator of the fraud may have suffered incidentally as a result of an arrangement procured by his fraud.

APPEAL from Houston. Tried below before the Hon. John R. Kennard.

Suit by appellees against appellant for $1,030.17, balance of open account. Appellees sued out a writ of attachment. Appellant answered and set up a release and judgment in bar of plaintiffs' action, as follows: He admitted that on January 24, 1882, he was indebted to appellees over $3,000, including the balance now sued for; but alleged that on December 26, 1881, he made an assignment for the benefit of his creditors, and delivered his effects to the assignee; that on December 28, 1881, appellees brought suit on the indebtedness, sued out a writ of attachment, and caused the writ to be levied on said effects in the possession of the assignee; that about the same

time Le Gierse & Co. and Chas. Heidenheimer & Co. also sued out attachments against him and had the same levied on said effects; that the property so levied on (which consisted of a store-house and lot valued at $2,000 and a stock of merchandise valued at $10,000, and embraced all the assets except the assignor's notes and accounts) was taken from the assignee by the sheriff, who retained possession till about January 26 following. That on January 24, 1882, appellant, having settled with his other creditors, agreed with appellees and the other attaching creditors to pay them sixty-six cents on the dollar, and costs of suit, in full settlement of their claims, the payments to be made by drafts on S. Gumble & Co., of New Orleans, La., indorsed by Henry Grabenheimer, and payable in two, six and twelve months respectively, with interest from date, which was accepted by plaintiffs. That on that day the drafts were executed and delivered, and plaintiffs had since collected them; that thereupon plaintiffs executed and delivered to defendant a release of the indebtedness and agreed to dismiss the suit upon defendant's paying the costs, etc. That defendant had paid the costs, amounting to $100, and the property levied on had been released to him, and at the following term of court the suit was dismissed and judgment rendered that plaintiffs take nothing by their suit, etc. That before the settlement, the assignee was preparing to bring suits against plaintiffs and the other attaching creditors to recover the property attached, or its value, and damages, and that by the terms of the settlement all claim of damages on the part of the assignee and defendant were released. That the other attaching creditors accepted the same terms, and that the indebtedness of the attaching creditors at the time of the settlement was not all due.

Plaintiffs, on March 26, 1883, filed a first supplemental petition, in which they admitted the agreement and release as alleged by defendant, but set up in avoidance of the same that defendant falsely misrepresented the amount of his liabilities, and fraudulently concealed from the assignee about $3,000 in goods and a large amount of money, and that the assignment was a fraudulent device to mislead his creditors and coerce them into a compromise. That by such fraud, which induced the settlement, plaintiffs were damaged in the amount of the balance due on said account after crediting the drafts aforesaid, which drafts, they alleged, were paid with the defendant's money. They prayed, as in the original petition, for the amount of said balance, with interest, or for their damages as aforesaid, in case it should be held that they are not entitled to recover on their account.

Defendant on March 31, 1883, filed a first supplemental answer excepting to the supplemental petition of plaintiffs, and also denying all allegations of fraud, and alleging that, if there was any fraud, plaintiffs had full knowledge of all the facts before said release was given; that they were represented by attorneys at Crockett, whom they had fully advised by letter of all such alleged fraud, but the settlement was nevertheless made and the release given, whereby plaintiffs had waived the right to set aside said release, etc. Plaintiffs were notified to produce the correspondence between them and their attorneys.

Judgment for plaintiffs for the balance of their account and interest sued for.

First assignment: The court erred in overruling defendant's demurrer and exceptions to plaintiffs' first supplemental petition.

Second assignment: The court erred in overruling defendant's exception to and motion to quash the writ of attachment.

Other assignments of error are lengthy and are apparent from the opinion.

The court filed the following conclusions of facts:

"1st. The defendant falsely represented to the plaintiffs the amount of his assets, in stating they were not more than as stated in his schedule attached to his assignment, and that a settlement on that basis would leave him penniless or without any means, when in fact his assets were greater by the value of a large but indefinitely ascertained amount of goods withheld from such schedule, and at the date thereof concealed in the store of H. Gernsbacher & Co., in Crockett, Texas.

"2d. That by the false statements above mentioned made to the plaintiffs in Galveston, they not knowing their falsity were induced to agree to the settlement of their debt and dismiss their attachment therefor then pending in the district court of Houston county, Texas, and release the property thereunder levied upon.

"3d. That at the time of making the false statements mentioned in the first paragraph hereof, plaintiffs were without knowledge or means of knowing the true condition of defendant's pecuniary affairs or the truth or falsity of his said statements, and the defendant did know they were false, and they were made by him to deceive them, and they were thereby deceived.

"4th. That as soon as plaintiffs were apprised of the falsity of defendant's statement, which induced them to give the letter to defendant authorizing their attorneys, Nunn & Williams, to settle their debt on the basis therein mentioned and to release the debt

and property attached, they (plaintiffs) promptly and without delay endeavored by telegraph and letters by mail to countermand the same, unless percentage of payment was raised from sixty-six to seventy-five per centum of their debt; but before said countermand was known to said attorneys, they had in good faith, on faith of the letter of authority borne by defendant, executed the release of debt and property attached in their suit and received the drafts or acceptances mentioned in said release.

"5th. That after the release of the attached property, the plaintiffs and defendant could not, by a rescission of the agreement of settlement and release of debt, be restored to their respective previous conditions in relation to the debt and the property attached to secure it."

The court concluded as matter of law that plaintiffs were not bound by their release, but were entitled to "judgment for the balance of their debt after allowing the credits for the drafts or acceptances received from defendant."

*J. R. Burnett,* for appellant, cited: Ellis *v.* Mills, 28 Tex., 584; Cooley on Torts, p. 504; Jewett *v.* Petit, 4 Mich., 512, 513; Potter *v.* Monmouth Ins. Co., 63 Me., 440; Jarrett *v.* Morton, 44 Mo., 275; Brown *v.* Hartford Ins. Co., 117 Mass., 479; Fishback *v.* Phoenix Ins. Co., 54 Cal., 422.

That plaintiffs, by receiving the benefits of the compromise after knowing the alleged fraud, could not recover, he cited: 2 Pomeroy's Eq. Jur., secs. 816, 817, also 897 and 916; 3 Wait's Actions and Defenses, pp. 470–472; 1 Wharton on Contracts, sec. 288; Grymes *v.* Sanders, 93 U. S., 62; Dunks *v.* Fuller, 32 Mich., 242; Cobb *v.* Hatfield, 46 N. Y., 533; Cooley on Torts., p. 505.

*Nunn, Williams & Corry,* for appellees, that the action could be sustained on the amount originally due, after allowing the compromise payment, cited: Lichtenstein *v.* Lowenstein, 1 Tex. L. Rep., No. 10, p. 806; Kahn *v.* Gumberts, 9 Ind., 430; Danglish *v.* Tenant, L. R., 2 Q. B., 49; Partridge *v.* Messer, 14 Gray, 180; Stuart *v.* Blum, 28 Pa. St., 225; Pierce *v.* Wood, 23 N. H. (3 Foster), 519; 2 Parsons on Contr., p. 780, note (v).

On the sufficiency of their pleading, they cited: Kahn *v.* Gumberts, 9 Ind., 430; Jackson *v.* Hodges, 24 Md., 468; Irving *v.* Humphrey, Hopk., 284; Armstrong *v.* Mechanics' Bank, 6 Bliss, 520; Richards *v.* Hunt, 6 Vt., 251; Reynolds *v.* French, 8 id., 85.

WALKER, P. J. COM. APP.— The first assignment of error is that
the court erred in overruling defendant's demurrer and exceptions
to plaintiffs' first supplemental petition. The exceptions may be
considered in their order. The first is that the pleadings of plaint-
iffs admit that the cause of action sued on, to wit, balance due on
account, has been settled and discharged, and show that, if plaint-
iffs have any cause of action by reason of the fraud and misrep-
resentations alleged against defendant, that the same is for damages
for such fraud, and not on the original cause of action.

The prayer for relief contained in the supplemental petition is
alternatively for the balance of account sued for, or for the amount
thereof as damages for the alleged fraud, and the prayer in the
original petition is for general relief, as well as for the amount sued
for as the balance due on the account. The court will render such
judgment in the premises as the evidence in the case requires. See
Hardy v. De Leon, 5 Tex., 212; Nash v. George, 6 Tex., 234; Wintz
v. Morrison, 17 Tex., 372; Ware v. Bennett, 18 Tex., 794; Smith v.
Clopton, 4 Tex., 109. See, also, Mitchell v. Sheppard, 13 Tex., 484.
If the plaintiffs are entitled to recover under either aspect of their
case, if the facts alleged as constituting a fraud upon the plaintiffs
are a sufficient answer to the defendant's answer, it follows that the
supplemental petition is sufficient, whether they be entitled to re-
cover under the prayer for one relief or the other.

The second special exception is that it was not competent for
plaintiffs to set up in this suit, especially in a supplemental petition,
a new cause of action, as for damages for fraud. The pleading
referred to is not obnoxious to the objection that it set up as by
amendment a new and distinct cause of action from that relied on in
the original petition; it was a reply — a replication it would be
termed in common law parlance — to the defendant's answer; and
pertinent to the phase of the case thus existing under the develop-
ment of the pleadings by the defendant and that required to meet
it on the part of the plaintiffs, they prayed, as they well might have
done, for the relief appropriate to their pleadings as they then
stood.

The third exception is that the allegations of fraud and misrepre-
sentations are insufficient, in that it is not alleged when plaintiffs
had knowledge of the same, so that it may appear whether they
waived or confirmed the same; and it is not alleged that defendant
made any concealment of his assets, or that plaintiffs could not by
reasonable diligence have discovered their existence.

The contract which the imputed fraud and misrepresentations

related to was the agreement to compound the defendant's debt to the plaintiffs at sixty-six cents on the dollar in full discharge of the same, and in determining the question here presented it is important to consider the discrimination to be made between the two remedies of rescission of the contract, and that of an action to recover damages for the deceit.

The plaintiffs' original petition takes no notice of the release set up by the defendant, and the supplemental petition taken in connection with it is to be regarded as construing the fraud as avoiding the contract to release the debt the same as if it had not been made, and not as acquiescing in the fraud or as affirming the contract. The plaintiffs do not seek to rescind the contract, but in effect allege that they were damaged by the fraud practiced upon them to the extent of the unpaid balance of their account. They having received, by the composition made, about two-thirds of their debt, may not have preferred to rescind the contract, nor yet to acquiesce in the results of the fraud. In such case they may recover damages for the fraud or deceit under circumstances that a cancellation or rescission of the contract would be denied to them. In Whitney v. Allaire, 4 Denio, 554, it is laid down that when a party, after the making a contract, but before its performance, discovers the fraud of the other, and still goes on and performs his part, he is thereby precluded from the equitable remedy of cancellation, and also from the remedy of recovering back the consideration, but not from the legal remedy of damages for deceit. See note 1, vol. 2, Pomeroy's Eq. Jur., sec. 897.

The distinction between the remedies appropriate to cases of fraud are thus stated by Bigelow in his treatise on fraud, p. 184. " It is well established that if a party, with knowledge that a fraud has been perpetrated upon him in a particular transaction, confirm the transaction by making new agreements or engagements respecting it, or by retaining and using the subject of it after knowledge, or otherwise recognize it as binding, he thereby waives the right to treat it as invalid, and abandons his right to rescind if it be a case of contract, or to redress if it be a tort not attended with a contract with the wrong-doer. If the fraud result in a contract, performance of the same, after discovering that it was fraudulently obtained by the opposite party, does not preclude a person from suing for damages on account of the fraud. The injured party may retain the benefits of the contract, confirm its validity, and still recover damages for the fraud by which he was induced to make it; or he may recoup any damages which he has sustained, if the opposite party

sue him for money due on the contract, or for other failure to perform it."

Applying these doctrines to the facts of this case, it follows that the plaintiffs were certainly entitled to sue for their unpaid balance of account as for damages, and therefore the plaintiffs' petition in that aspect, at any rate, is sufficient as against this exception.

It is, however, urged by the appellees' counsel in their brief and written argument, that the doctrine of the rescission of contracts has no proper application to this case, and that the plaintiffs were entitled to simply treat the amount received by them in the compromise as a payment *pro tanto*, and to sue for the balance of their account. They cite in support of this view Kahn *v.* Gumberts, 9 Ind., 430; Partridge *v.* Messer, 14 Gray, 180; Stuart *v.* Blum, 28 Pa. St., 225; Pierce *v.* Wood, 23 N. H. (3 Foster), 519, which authorities maintain, we think, the doctrine contended for, so far as it may be invoked in cases in which the contract sought to be avoided for fraud involves only the acceptance of the debtor's terms of composition upon fraudulent inducements and the party has received a part of the payment of the debt. Where, however, the contract involves further acts to be done by the party committing the fraud besides the payment of the agreed amount, which involve a sacrifice of pecuniary interest or the forbearance to assert a right which was the subject of the contract of compromise, as, for instance, the dismissal of a suit in which he had an interest, it is not so clear that the rules of law applied in the cases cited would apply.

In such state of case, whilst, it is true, the party injured by the fraud might, nevertheless, be entitled to sue in damages for the deceit, he might not be entitled to sue simply for the balance due as for a part of his original demand. He would be subject to the ordinary rule that would require him to repudiate with promptness, after the discovery of the fraud, the contract, even if he accepted and retained the benefits of the payment made, so as to enable the party committing the fraud to maintain, as far as he might do, his *status* in respect to those matters which he had engaged to do. Failing to repudiate or give notice of such within a reasonable time, he would perhaps be enabled only to maintain his action for damages.

The supplemental petition, however, is therefore an answer to the defense set up so far as plaintiffs assert an action for damages.

In respect to the proposition to which the brief of appellees' counsel cites authorities to the effect that the doctrine of rescission of contracts does not apply to cases like this, it is met by opposing authorities cited in the brief of appellant's counsel to the counter

effect, holding that where a creditor is induced by the fraudulent representations of his debtor to compromise, and receives a part of his demand, he cannot on discovery of the fraud retain the sum paid, and sue in *assumpsit* for the balance; but he may retain the payment and maintain an action on the case for damages sustained by the fraud; citing Jewett v. Petit, 4 Mich., 508; Walsh v. Sisson, 13 N. W. Rep. (Mich.), 802; Gould v. Cayuga, etc., National Bank, 21 Hun (N. Y.), 293; Potter v. Monmouth Ins. Co., 63 Me., 442; Jarrett v. Morton, 44 Mo., 275; Brown v. Hartford Ins. Co., 117 Mass., 479; Fishbeck v. Phœnix Ins. Co., 54 Cal., 422.

These cases seem to be well sustained by reason and the current of authority, and the true rule seems to be thus well established as it is laid down in these cases.

In the case of Jewett v. Petit, *supra*, Justice Douglass reviewed the case of Pierce v. Wood, 23 N. H. (3 Foster), cited by appellees' counsel, and expressed doubts of its correctness upon reasons which seem to us to be convincing.

The remaining exceptions need not be referred to, as their merits are mainly disposed of in what has been already said.

The second ground of assigned error is the overruling of the defendant's motion to quash the writ of attachment; the ground of the motion being because plaintiffs' pleadings showed that the action was for unliquidated damages.

Such a motion could prevail only when it appears from the cause of action set forth by the plaintiffs that the claim is for unascertained and unliquidated damages. The plaintiffs' original petition sued for a specific amount due by account, and the plaintiffs' supplemental petition prayed judgment for the same in the same manner, and alternatively prayed for a judgment for the same amount of balance on account as the damages to which they were entitled. We do not think that the plaintiffs' pleadings showed a claim by them for unliquidated damages; at most the damages that were claimed were specific and determinate. All the facts alleged as they appear in their relative connections as pleadings, show, it is true, that under the issues, the plaintiffs, if entitled to recover at all, must recover for damages. But this hypothesis is predicated upon the assumption that the defendant shall have relied on his answer at the trial and supported it by evidence sufficient to require the plaintiffs to rebut it or avoid it in some proper manner. The plaintiffs in their supplemental petition, it is true, replying to defendant's answer, admit the execution of the contract to compromise and release pleaded by defendant as an answer to plaintiffs' suit on their original cause

of indebtedness, but it must be borne in mind that this admission is made as a replication and not as an amendment setting up a new and distinct cause of action. It nowhere abandons the cause of action set forth in the original petition, but it sets up matter of confession and avoidance of the facts pleaded as an answer to plaintiffs' original cause of action.

If the plaintiffs had proved the account sued on, and defendant had offered no evidence whatever, is it not clear that the plaintiffs would recover on the cause of action set out in the original petition? If, however, the case should be developed by full proof of the facts pleaded by both parties contained in all their pleadings, then only would it become a question as to whether the plaintiffs might recover for unliquidated damages or for a specific amount as set forth in the original petition.

This view is, we think, decisive that a motion to quash the attachment for the cause relied on could not prevail. A motion to quash reaches only what is patent on the face of the record.

The appellant's sixth and seventh assigned grounds of error are as follows:

"6th. If plaintiffs had any cause of action under the facts, after having failed to promptly disaffirm the agreement and after acting under it, etc., as above assigned, it was for damages for the alleged fraud; and the court erred in giving judgment for plaintiffs for the balance of the account and interest upon the original contract and without finding damages to that amount for fraud; and the finding and judgment of the court are unsupported by the evidence, in this: there is no evidence or finding that plaintiffs were damaged by the alleged fraud, or that they would have received more on their debt than they actually received had all the assets of defendant been properly rendered."

"7th. If plaintiffs are entitled to judgment under the law and facts, defendant should be allowed a deduction for the costs paid by him under the agreement."

Conceding the rule of damages to be as stated, the evidence, we think, supports the judgment of the court. The rule is thus stated in Walsh v. Sisson (Mich.), *supra*, quoting from Jewett v. Petit, 4 Mich., 514: "Where the creditor brings an action to recover damages for the fraud, retaining what he has received, he thereby affirms the compromise, and the damages which he is entitled to recover is the amount he would have received had no fraudulent concealment been made. This is the extent of the fraud practiced upon him. Field, Dam., sec. 706; Page v. Wells, 37 Mich., 421; Warren v. Cole, 15 Mich., 274; Bowman v. Parker, 40 Vt., 413; Foster v. Ken-

nedy, 38 Ala., 359; Moberly v. Alexander, 19 Iowa, 164; Reynolds v. Cox, 11 Ind., 266."

The boastful declarations of the defendant after consummating the transactions involving a settlement of composition with his creditors, to the effect that he had so far misled and overreached them by deceptions practiced by him in effecting it that he was worth $10,000 after paying his said debts, seem from the general tenor of all the evidence in the case to commend them to belief. These statements made by him were proved by three witnesses. The defendant evidently was well acquainted with the condition of his own affairs, and knew whereof he spoke. In those conversations he elaborated the subject, too, in a way to indicate that he meant to make the statements he did make, seriously, and the specifications of certain facts mentioned by him at the time, intended apparently to urge conviction on his hearers of the truth of his statements of successful imposition, all seem to receive an appearance of corroboration in the evidence as it was developed on the trial. Mr. Lasker testified that he heard the defendant, a few hours after the settlement was made with him, state to Isaac Heidenheimer how he had got the best of him (Lasker, who represented the claims of the plaintiffs Le Gierse & Co. and Heidenheimer & Co.); that, "although he (Lasker) was considered to be pretty smart, he had bamboozled him; that he would get out of this settlement worth from eight to ten thousand dollars; that a certain stock of goods unassigned would come back to him immediately after his settlement was completed. That he did not owe the amount of money that was represented as liabilities according to the schedule furnished to the assignee; that he owed Gumble & Co. virtually nothing." The debt of Gumble & Co. was scheduled at $5,500; Judge Burnett testified, however, that the entry ought to have been $3,500, and was incorrectly entered as above by mistake. The debts, if correctly scheduled, including one that was compromised just before the assignment was made, amounted to about $17,000, more or less. If the Gumble & Co. debt be subtracted, the indebtedness would be, say, $13,500. Those debts being adjusted at sixty-six cents on the dollar, it would require thirty-four per cent. to make up the full amount of the indebtedness. It would require about $4,600 to make up the difference between sixty-six per cent. and the full face value of the entire indebtedness. Consequently, according to the defendant's declarations concerning his means, at the time when he induced the plaintiffs to compound their debt with him, he was abundantly solvent, and was able to pay all he owed his creditors, with a liberal margin to spare as an excess over and

above the amount of his liabilities. The evidence thus indicated his solvency even though the Gumble & Co. debt had been a real and *bona fide* indebtedness.

The evidence showed that, as a fact, the defendant did go at once into business after the compromise with his creditors, with a certain stock of goods to which the evidence significantly pointed as being the same to which he referred in his statement to Isaac Heidenheimer, and strongly intimated that he had been all along their real owner. The evidence tended to show that that stock of goods had been to a considerable degree reinforced in amount by additions made to it from the stock of goods which he had assigned for the benefit of his creditors only a short time before the assignment was made. This, together with many circumstances developed in the examination of defendant's witnesses testifying in regard to the said unassigned goods, known as the goods of Gernsbacher & Co., tended to confirm the impression that the defendant was the owner of them, as well as of goods which had been added, as above stated, from the assigned stock. It is not deemed necessary to elaborate specifically the testimony relevant to these *indicia* of a fraudulent concealment of defendant's means; it is insufficient to say, that, so far from rebutting the force of defendant's statements concerning the amount and character of his means, that the evidence was such as at least allowed of the reasonable inference that his statements to Heidenheimer had reference to the Gernsbacher stock of goods, and that they were truthfully made.

Gernsbacher testified that his stock of goods was worth $2,700 when defendant made the assignment, and that he owed the defendant $700. To what extent, if any, that stock was increased by additions to it from the defendant's, is not made clear; the failure to render it reasonably or approximately so is not favorable to the conclusion that the stock may not have been worth more than $2,700; nevertheless, such may not have been the case.

Gernsbacher testified that defendant bought him out a few days only after the compromise settlement with plaintiffs at a specified sum, $300 (which he stated had never been paid to him), the defendant to pay all the debts due by Gernsbacher & Co. On cross-examination he was asked to enumerate the debts and their amounts. In reply he mentioned a debt to these plaintiffs of $400, and debts to two St. Louis firms, naming them, but stated that he could not state the amounts. These circumstances were calculated to throw suspicion on the genuineness of the sale, and to support the hypothesis that it was a sham, and intended as a cover to protect the defendant in his resumption of business with his own goods.

Neither Gernsbacher, nor Henry Grabenheimer, defendant's brother, with both of whom he seemed on intimate business relations, had any notice of defendant's previous intention to make an assignment. Henry Grabenheimer testified that the defendant was doing or had done a prosperous business during that season. After he resumed business, the character and size of his mercantile transactions seemed to be consistent with the supposition that he had at least the control of considerable means or credit.

It was the province of the judge, the same as of a jury, to weigh the evidence, and to determine the credibility of the witnesses, and we think, for the reasons already given, that the evidence is sufficient to support the conclusion that the plaintiffs were damaged by the defendant's fraud to the full amount of the balance of their account under the application of the rule which the appellant's counsel invokes in the assignment under consideration. In other words, that the defendant's assets were amply sufficient to have paid his debts, dollar for dollar.

The seventh assignment is not well founded. "*Ex turpi causa non oritur actio.*" The defendant cannot profit by the result of a loss superinduced by his own fraud. Whilst it is true that the plaintiffs are held to the affirmance of the contract of settlement in this action, and may recover only the damages sustained by them by reason of the fraud, it does not follow that the amount of their damage shall be recouped and diminished by the loss which the defendant has encountered in carrying out the terms of the contract which he fraudulently procured to be made. Besides, the defendant has not set up a claim to compensation by appropriate pleadings. His answer sets forth the alleged payment merely incidentally, by way of averment of performance on his part with the terms agreed on for settlement with the plaintiffs, but he does not plead the same in reconvention with prayer for allowance of the same as against plaintiffs' claim for damages.

There are several other grounds of error presented in the brief of appellant's counsel which are urged with force and discriminating learning and research, all of which have received careful consideration. We do not think, however, that any of them are sufficient to warrant a reversal of the judgment. We have discussed what we find to be the controlling and material matters which the merits of this appeal involve, and our opinion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted February 23, 1885.]