ROTAN GROCERY CO. v. TATUM et al.

(Court of Civil Appeals of Texas. Dallas.
May 18, 1912. Rehearing Denied
June 15, 1912.)

1. TRIAL (§ 142*)—TAKING CASE FROM JURY—QUESTION OF LAW OR FACT.

It is only where reasonable minds cannot differ as to the conclusion to be drawn from evidence that a case may be withdrawn from the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337; Dec. Dig. § 142.*] ·

2. ACCOUNT, ACTION ON (§ 15*)—TRIAL—QUESTION FOR JURY.

On evidence in an action on a verified open account, held that the question of plaintiff's right to recover against part of the defendants was for the jury.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. § 83; Dec. Dig. § 15.*]

3. ACCOUNT, ACTION ON (§ 15*)—TRIAL—INSTRUCTIONS.

In an action on an open verified account against an individual, a firm of which he was a member, and a succeeding firm, where it appeared that the firms had not assumed the individual's debts and were not liable therefor, and where the individual did not undertake to apply his firm's check sent to the creditor to the payment of debts due by him, a charge, that where one partner, acting within the scope of his authority, obtains money and applies it, the firm is answerable for it, was properly refused.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. § 83; Dec. Dig. § 15.*]

4. ACCOUNT, ACTION ON (§ 13*)—PLEADING.

An affidavit of defendants, in an action on an open verified account, denying under oath the · justness of the account, and alleging that neither of the answering defendants owed the account or any part thereof, was sufficient to authorize the admission of testimony tending to show that defendants were not liable.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. §§ 77–80; Dec. Dig. § 13.*]

5. ACCOUNT, ACTION ON (§ 15*)—TRIAL—JUDGMENT.

In an action on an open verified account against an individual and a firm consisting of that individual and others, the individual was party to the suit for all purposes which could affect him, either individually or as a partner in the firm, so that a judgment against him and in favor of the other defendants disposed of all the defendants to the suit.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. § 83; Dec. Dig. § 15.*]

6. APPEAL AND ERROR (§ 719*)—ASSIGNMENT OF ERROR—NECESSITY.

Error not assigned will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

7. APPEAL AND ERROR (§ 934*)—REVIEW—PRESUMPTIONS IN FAVOR OF JUDGMENT.

Where there is no assignment of error complaining that the evidence was insufficient to authorize a judgment on a cross-action, every presumption in favor of the correctness of the judgment in that respect must be indulged.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

8. ACCOUNT, ACTION ON (§ 15*)—TRIAL—BURDEN OF PROOF.

In an action on an open verified account, where the account showed certain payments appropriated by the defendant firm and by plaintiff to the payment of the account due from the firm to plaintiff, a refusal to instruct that the burden of proof was upon defendants to show that such payment was made with directions that it be appropriated to the payment of an account owed by the firm to plaintiff was properly denied.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. § 43; Dec. Dig. § 15.*]

9. TRIAL (§ 256*)—INSTRUCTIONS—REQUEST FOR INSTRUCTIONS.

A instruction correct as far as it goes and containing no affirmative error cannot be complained of in the absence of a correct special charge requested by the party desiring a more accurate instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

10. APPEAL AND ERROR (§ 1066*)—REVIEW—HARMLESS ERROR—INSTRUCTIONS.

In an action on an open verified account against an individual and two firms, where the evidence established that the individual was engaged in the confectionery business prior to a certain date, an instruction, that the undisputed evidence showed that prior to that date he was engaged in that business, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

11. APPEAL AND ERROR (§ 736*)—ASSIGNMENT OF ERROR—SEPARATE ASSIGNMENTS.

Assignments presenting separate and distinct questions for decision are improperly grouped, under the rules, and are not entitled to consideration by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. § 736.*]

12. EVIDENCE (§ 314*)—HEARSAY—PARTICULAR ISSUE.

In an action on an open verified account, evidence by a member of the defendant firm that the firm during a certain time bought goods of a certain total amount, for which the firm overpaid by its check, which was applied by plaintiff to the individual debts of the firm's predecessor without its knowledge or consent, was not objectionable as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1168–1173; Dec. Dig. § 314.*]

13. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSION OF WITNESS.

Nor was the evidence objectionable as being an opinion of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

14. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR—EVIDENCE.

Error in the admission of evidence from which no substantial injury results to the party objecting is not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

15. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—NECESSITY.

In the absence of an assignment of error complaining of the court's refusal to permit counsel for appellant to present and read authorities, the matter cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Appeal from Grayson County Court; J. Q. Adamson, Judge.

Action by the Rotan Grocery Company against Jim Tatum, the Bledsoe-Birge Company, and others. Judgment for plaintiff against Jim Tatum and judgment for Bledsoe-Birge Company on their cross-action and in favor of the other defendants, and plaintiff appeals. Affirmed.

J. P. Leslie, of Sherman, for appellant. T. L. Brame, of Sherman, for appellees.

TALBOT, J. This suit was instituted by the appellant, a corporation created by the laws of Texas and having its principal place of business at Waco, in McLennan county, Tex., against the appellees on a verified open account for the sum of $208.25. The petition complains of Jim Tatum, a resident of Tarrant county, Tex., and of Tatum & Co., which is alleged to be a firm composed of "Jim Tatum and H. Bledsoe, or Jim Tatum, H. Bledsoe, and D. P. Fearis, the latter two residing in Grayson county, Tex.," and of the Bledsoe-Birge Company, a corporation, and charges that, on or about the 20th day of July, 1909, and prior thereto, the plaintiff, Rotan Grocery Company, sold and delivered to "Jim Tatum or Tatum & Co. goods, wares, and merchandise for a balance in the sum of $208.25," as shown by the itemized and verified claim or account filed and made a part of the petition. It is further alleged, in effect, that plaintiffs had been selling goods to Jim Tatum, who was then carrying on and conducting a business in his own name; that he afterwards sold out to said Tatum & Co., who continued the business, with Jim Tatum as its managing partner, without its knowledge; that Tatum & Co., without its knowledge, sold out in August, 1909, to the defendant Bledsoe-Birge Company; that said Bledsoe-Birge Company bought the old stock of goods belonging to Tatum & Co. and mingled a new stock of goods with the same "and sold the mingled stock and appropriated the proceeds to its benefit." The defendants answered by general demurrer and general denial, and, specially, that they never assumed the indebtedness of Jim Tatum or any part thereof; that the defendants Tatum & Co. bought only $141.50 worth of goods from plaintiff; that amount, which was all they had ever bought or assumed, had been fully paid; that the check of Tatum & Co. for $160 had been sent to plaintiff and collected by plaintiff, leaving an excess in plaintiff's hands of $18.50, which belonged to Tatum & Co.; that Bledsoe-Birge Company had bought no goods of plaintiff, had never become indebted to plaintiff in any way, but had bought out Tatum & Co. and all claims and debts owing to or belonging to Tatum & Co. Defendants alleged that they never authorized or consented for Jim Tatum to give the check of Tatum & Co. in payment of his individual debts or any part thereof, that they had no knowledge that he had done so, and had never ratified it; and Bledsoe-Birge Company, by way of cross-action, asked judgment for said excess of $18.50. Plaintiff, by first supplemental petition, excepted specially and generally to defendants' answer, and alleged that the $160 was paid in the usual course of business, in the usual way, and it was applied to the oldest items of the account due; that it had no knowledge or notice that Jim Tatum had been succeeded by Tatum & Co., composed in any way; that said payment of $160 having been paid and without notice in the change of members in said firm in due course of trade and applied to the oldest items of account, which was right and proper and according to law, and that the payment having been made by one not only a member of said firm but one who had control and management of the business, defendants are estopped from claiming a fraudulent application of said amount, but that same was applied according to law; that defendants bought and continued the business and are each liable to plaintiff. The case was tried before the court and a jury, and the trial resulted in a verdict and judgment in favor of the plaintiff against Jim Tatum for the sum of $208.25, in favor of Bledsoe-Birge Company on their cross-action against plaintiff for the sum of $18.50, and that plaintiff take nothing against Tatum & Co., H. Bledsoe, and D. P. Fearis. The plaintiff's motion for a new trial being overruled, it appealed.

[1, 2] The first and second assignments of error are grouped in the brief. The first complains of the court's refusal to instruct the jury to find for plaintiff against all of the defendants for the sum of $208.25 with interest from October 2, 1909. The second charges that the court erred in refusing to instruct the jury at plaintiff's request as follows: "You are instructed that as Tatum & Co. succeeded Jim Tatum, and that Jim Tatum represented himself and Tatum & Co., that plaintiff had the right to apply the $160 to account of Jim Tatum or Tatum & Co., and, having applied same to the oldest items, you are instructed to find for plaintiff against all defendants for $208.25, with interest at 6 per cent. from October 2, 1909."

The two propositions presented under these assignments are to the effect that, where a partial payment is made by a debtor to a creditor who holds more than one claim, or a continuous account against him, and there has been no actual appropriation of the payment by the debtor at or before the time of payment, the creditor may apply it to whichever debt he pleases, or to the items of the account according to their priority of time, if such appropriation does not operate to the prejudice of the debtor. The propo-

sitions embody substantially a correct general rule of law, and we presume, as the assignments are not accompanied by a proposition to that effect, that the charges in question were asked upon the theory that the evidence introduced conclusively established all the facts, necessary to plaintiff's right of recovery, as the giving of the charges would not have been otherwise warranted. For, as has been repeatedly said, it is only where reasonable minds cannot differ as to the conclusion to be drawn from the evidence that the case, or the particular issue to which it relates, may be withdrawn from the jury. Such was not the conclusive character of the evidence in this case. On the contrary, if the evidence did not conclusively show that plaintiff was not entitled to recover against the defendants Tatum & Co. and Bledsoe-Birge Company, it was amply sufficient on every fact essential to plaintiff's right of recovery to require the submission of those facts to the jury for their determination. If the evidence did not conclusively establish it, it was abundantly sufficient to authorize the jury to find the existence of the following facts: That the copartnership firm of Tatum & Co. was formed June 4, 1909, and was composed of Jim Tatum, H. Bledsoe, and D. P. Fearis; that said firm bought only three bills of goods from the plaintiff, amounting in the aggregate to the sum of $141.50; that these bills bore date, respectively, June 26, 1909, July 15, 1909, and July 30, 1909; that at the date of the first of these bills of goods plaintiff knew, or was from the facts and circumstances then known to it chargeable with notice, that there had been a change made in Jim Tatum's mercantile business, and that they were selling that bill of goods not to Jim Tatum alone, but to the firm of Tatum & Co.; that each of the three bills of goods purchased by Tatum & Co. from plaintiff, above referred to, shows upon its face that the goods specified therein were sold to "Tatum & Co.," and the first bill, or bill dated June 4, 1909, shows the following: The Rotan Grocery Company sold to Tatum & Co. Suc. to Jim Tatum, Sherman, Tex. That the sum of $160 was paid by Tatum & Co. by check dated July 19, 1909, on the Merchants' & Planters' National Bank of Sherman, Tex., which was signed "Tatum & Company," with instructions to apply said sum to the payment of their account, and that it was so applied.

In reference to this payment, H. J. White, who was, at the time it was made, the assistant manager of plaintiff, "handling all accounts," testified, by deposition: "We did receive a remittance of $160 to be applied on account of Tatum & Co., accompanying which remittance I attach hereto letter from salesman to whom said payment was made, marked 'Exhibit A.' Said remittance of $160 was applied to the account of Tatum & Co., as per the instructions contained in letter from our Mr. Flagg." The evidence was amply sufficient to justify the further finding that, while Bledsoe-Birge Company assumed the debts of Tatum & Co. contracted after June 4, 1909, it never bought any goods from the plaintiff; that it was never interested in any business whatever with Jim Tatum; that Jim Tatum sold out his interest in the firm of Tatum & Co. about August 23, 1909; that about the same time Tatum & Co. sold out to Bledsoe-Birge Company, a corporation, and transferred to it all the claims, accounts, and property belonging at that time to Tatum & Co.; that neither H. Bledsoe nor D. P. Fearis was ever a partner of Jim Tatum, or interested with him in any business under the name of Tatum & Co., or otherwise, prior to June 4, 1909; that neither the firm of Tatum & Co. nor the Bledsoe-Birge Company ever assumed the debts of Jim Tatum or bought out any business which was owned and being conducted by Jim Tatum.

H. Bledsoe testified, among other things: "The firm of Tatum & Co. was formed on the 4th day of June, 1909. I was never a partner of Jim Tatum nor interested with Jim Tatum in business under the name of Tatum & Co., or any other name, prior to June 4, 1909. The firm of Tatum & Co. did not assume any of the debts or obligations of Jim Tatum, and did not buy him out. He did business in the Caruthers building on the east side of the square under the name of Jim Tatum; while the firm of Tatum & Co. did business at the Binkley Hotel building in Sherman, Tex. * * * The firm of Tatum & Co. was insolvent, owed many debts, and was unable to pay the firm debts out of the partnership property; and the firm was dissolved when Jim Tatum sold out his interest. Bledsoe-Birge Company never bought any goods from plaintiff and never owed plaintiff anything. The corporation of Bledsoe-Birge Company was never interested in any business with Jim Tatum. I am president of Bledsoe-Birge Company and have been its president ever since it was organized."

D. P. Fearis testified: "The firm of Tatum & Co. was organized on June 4, 1909. It was composed of Jim Tatum, Hal Bledsoe, and D. P. Fearis. I was never connected with Jim Tatum in any kind of business, before June 4, 1909, when the firm of Tatum & Co. was formed. Jim Tatum had been doing business under his own name for some time in the Caruthers building on the east side of the square. He had very little stock. The firm of Tatum & Co. *did not buy out Jim Tatum,* but conducted a business from June 4, 1909, to about August 23, 1909, at the Binkley Hotel building in Sherman, Tex. The firm of Tatum & Co. was insolvent and

could not pay the debts of the firm out of the property of the partnership. Jim Tatum sold out his interest in the firm of Tatum & Co. some time about August 23, 1909, and the firm was dissolved. The corporation of Bledsoe-Birge Company bought out the business and all the property, including the accounts and claims of every kind, of the firm of Tatum & Co., about the time that Jim Tatum sold out his interest in the firm. Bledsoe-Birge Company assumed all the debts of Tatum & Co., but did not assume any of Jim Tatum's debts."

We will add that H. J. White, plaintiff's witness, did not testify that he did not know that Jim Tatum had changed his business and become a member of the firm of Tatum & Co., nor did any officer of the Rotan Grocery Company testify that said company did not know of such change.

[3] There was no error in refusing the special charges made the basis of appellant's third and fourth assignments of error. The single proposition under these assignments is as follows: "When one partner acting in the scope of his authority, as evidenced by the business of the firm, obtains money and applies it, the firm is answerable for it." As broadly stated, we do not think the proposition is a correct statement of the law, certainly not as applied to the facts of this case, and the charge enunciating in effect the same proposition would clearly have been misleading. If the firm of Tatum & Co. and Bledsoe-Birge Company had not assumed the payment of Jim Tatum's individual debts and were not otherwise liable therefor—and there is ample evidence in the record to show that they did not assume and were not liable therefor—then Jim Tatum, without their consent, was not authorized to apply the $160 to the extinguishment of his debt contracted with plaintiff before the formation of the firm of Tatum & Co. We think the evidence as a whole conclusively shows, however, that Jim Tatum did not undertake to apply the $160 to the payment of the debt due by him to plaintiff, contracted before the firm of Tatum & Co. was formed. He does not himself say that he did, nor is this payment referred to in this testimony at all; but H. J. White, who was assistant manager of plaintiff, testified: "I, with Mr. A. D. Anderson, talked with Mr. Jim Tatum relative to his account, and Mr. Tatum advised that Bledsoe-Birge Company assumed account with the exception of $65.-75 for which we agreed to take his (Jim Tatum's) note. Mr. Tatum also stated at this time that he thought the payment of $160 on July 15th was to be applied on the account of Tatum & Co."

[4] The fifth assignment is overruled. The answer or affidavit of the defendants Tatum & Co. and Bledsoe-Birge Company, denying under oath the justness of the account sued on by plaintiff, was sufficient to authorize the admission of the testimony offered by defendants. The affidavit was made by H. Bledsoe and is as follows: "Comes now H. Bledsoe for himself and as agent for D. P. Fearis and Bledsoe-Birge Company and Tatum & Co., and after being duly sworn on his oath, says that the account sued on in this case and every item therein is not just or true, in whole or in part, as to them or either of them, that no part of said account was ever made or the goods therein stated. were ever purchased by H. Bledsoe, D. P. Fearis, Tatum & Co. or Bledsoe-Birge Company or any one or more of them, except those certain items shown to have been purchased in June and July, 1909, amounting in the aggregate to $141.50, and that those said items were paid for by Tatum & Company, on or about July ———, 1909; that neither said defendants or any one or more of. them owe the account sued on herein or any part thereof." It does not appear from appellant's brief or the record that the sufficiency of this affidavit was challenged in the county court. The contention seems to be that the testimony shows that H. Bledsoe was not acquainted with the facts to which he deposed in the affidavit, and therefore the case stands as if no affidavit was made controverting or denying any item of plaintiff's account. We do not think there is any merit in this contention, and it is not sustained.

[5] The next proposition urged by appellant is that: "Jim Tatum being a partner of. Tatum & Co. and not being sued, no recovery can be had through said firm, nor final judgment entered in the case." This proposition is not sustained by the record. As heretofore shown, the petition complains of Jim Tatum, Tatum & Co., a firm composed of Jim Tatum, H. Bledsoe, and D. P. Fearis. The verdict reads thus: "We, the jury, find in favor of the plaintiff against Jim Tatum, defendant, in the sum of $208.-25. We further find in favor of Bledsoe-Birge Company against plaintiff for the sum of $18.50. We further find in favor of Tatum & Co. and H. Bledsoe and D. P. Fearis." The judgment is in accordance with the verdict and disposes of all the defendants to the suit. Jim Tatum was a party to the suit for all purposes, which could affect him, either individually or as a partner of the firm of Tatum & Co.

[6, 7] In this connection, we will state that there is no assignment of error complaining that the evidence was insufficient to authorize the verdict and judgment in favor of Bledsoe-Birge Company for the sum of $18.-50, claimed to have been paid in excess of the amount due by Tatum & Co., by oversight, or mistake, nor is that portion of the judgment otherwise attacked; therefore that part of the judgment is not before us for review. In the state of the record every pre-

sumption in favor of the correctness of the judgment in this respect must be indulged.

[8] The ninth assignment, complaining in substance that the court erred in refusing to instruct the jury, at plaintiff's request, that the burden of proof was upon the defendants to show that the payment of the $160 and that directions were given that it be appropriated to the payment of the account owed by Tatum & Co., will also be overruled. The account sued on shows the payment of the $160; besides, the undisputed testimony, as we construe it, shows not only that such payment was made, but that all of it, except $18.50, the excess over and above the amount due by Tatum & Co., was appropriated by both Tatum & Co. and by the plaintiff to the payment of the account due by Tatum & Co. to plaintiff. Especially does this appear from the testimony of H. J. White, plaintiff's assistant manager, quoted in a former part of this opinion.

[9, 10] There was no error in instructing the jury that the undisputed evidence showed that prior to June 4, 1909, Jim Tatum was engaged in the confectionery business in Sherman. The evidence does show without contradiction that Jim Tatum was so engaged, and if H. Bledsoe became a partner of Tatum prior to June 4, 1909, and appellant desired a fuller or more specific or accurate instruction than that given by the court, such instruction should have been prepared and requested. The error, if any, in the court's charge, was not an affirmative error. It was correct as far as it went, and any omission therein should have been supplied by a correct special charge requested by appellant. If, however, it can be said that there was error in the court's charge, and the same was not one of omission, it is clear the same was harmless.

[11-13] The twelfth and thirteenth assignments are grouped in the brief, and complain of the admission of certain testimony. These assignments present separate and distinct questions for decision, and under the rules are improperly grouped and not entitled to consideration by this court. The twelfth assignment complains that the court erred in permitting H. Bledsoe and D. P. Fearis to testify, over the objections of the plaintiff, that during the months of June and July, 1909, Tatum & Co. bought three bills of goods from the plaintiff of the aggregate amount of $141.50, for which the firm of Tatum & Co. paid, and more than paid, by check for the sum of $160, dated July 19, 1909, signed by Tatum & Co., payable to the plaintiff, which check was cashed by plaintiff, and applied to the individual debt of Jim Tatum, without their knowledge and consent, etc. It appears that this testimony was objected to on the ground that the question propounded "called for answers of which the witnesses had no knowledge, being hearsay and opinion of the witnesses, and a matter for the jury to decide." The thirteenth assignment complains that the court erred in permitting said witnesses H. Bledsoe and D. P. Fearis to testify, over their objection, that Jim Tatum told them that prior to the forming of the partnership of Tatum & Co. he did not owe anything. The objections to this testimony were that it was hearsay, self-serving, immaterial, and irrelevant. It is apparent that the assignments do not involve the same legal question, and that the grouping of them is a violation of the rules prescribed for the briefing of cases; but, waiving this, we hold that the answers of the witnesses complained of in the twelfth assignment were not subject to the objection urged against their admission. Both of the witnesses were, at the time they state the three bills of goods were bought, and at the time the payment of the $160 was made, members of the firm of Tatum & Co., and their answers appear to be the statement of facts within their knowledge and not merely their opinions or conclusions.

[14] As to the testimony complained of in the thirteenth assignment, it is sufficient to say that, if it be conceded that it was hearsay or immaterial or irrelevant, no substantial injury resulted to appellants therefrom, and therefore the error of its admission, if error, furnishes no sufficient ground for a reversal of the case.

What is here said applies with equal force to the fourteenth and fifteenth assignments, and said assignments are overruled.

[15] It is suggested in argument that the trial judge refused to permit counsel for the plaintiff to present and read to him certain authorities bearing on questions involved in the case which he considered good law, but there is no assignment of error complaining of this matter. In the absence of an assignment of error, the court's action cannot be reviewed by this court.

Finding no reversible error in the record, the judgment of the court below is affirmed.