AMERICAN HOME LIFE INS. CO. et al. v. COMPERE.

(Court of Civil Appeals of Texas. Ft. Worth. April 5, 1913. On Motion for Rehearing, May 17, 1913.)

1. INSURANCE (§ 32*)—ORGANIZATION OF COMPANY—SUBSCRIPTIONS FOR STOCK—COLLATERAL AGREEMENT.

Where the promoters of an insurance company took a stock subscription and agreed that the company, if organized, would loan a certain sum to the stockholder, and the company accepted the contract, it took its burdens as well as its benefits and was liable for refusal to make the loan as agreed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 37; Dec. Dig. § 32.*]

On Motion for Rehearing.

2. TRIAL (§ 251*)—SUBSCRIPTIONS FOR CORPORATE STOCK—INSTRUCTIONS—PLEADING.

The promoter of a life insurance company took a stock subscription and agreed that the company, if organized, would loan the subscriber a certain amount. Part of the price of the stock was paid in cash to the promoter, and the subscription contract provided that if the company were not organized, or if it did not accept the contract, the money would be returned. After the completion of the organization, the subscriber brought an action against the company and the promoters in which he alleged that the company had accepted the subscription but refused to make the loan and asked for a return of the payment, with other damages. The court charged the jury that, if the insurance company did not accept the subscription in good faith, the subscriber was entitled to recover from the promoter the amount already paid by him. *Held*, that the instruction was erroneous as submitting to the jury an issue not made by the pleadings, considered as a whole, even though the supplemental petition prayed in the alternative for a judgment against the promoter if the plaintiff were mistaken as to the acceptance of the contract by the company.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Appeal from Tarrant County Court; Charles L. Prewitt, Judge.

Action by M. H. Compere against the American Home Life Insurance Company, R. T. Stuart, and another. Judgment for the plaintiff as against the defendants R. T. Stuart and another, and they appeal. Reversed and remanded on rehearing.

Goree & Turner, of Ft. Worth, for appellants. Lattimore, Cummings, Doyle & Bouldin and W. M. W. Splawm, all of Ft. Worth, for appellee.

CONNER, C. J. On the 22d day of April, 1909, appellee executed the following instrument in writing:

"The American Home Life Insurance Company.

"Subscription for Capital Stock.

"No. 2501.　　　　　　　　　50 Shares.

"Whereas, Stuart, Walker & Company, of Fort Worth, Texas, are promoting the organization of a life insurance company, to be incorporated in pursuance of the laws of the state of Texas, under the name of the American Home Life Insurance Company, with an authorized capital of at least $500,000.00 and a paid up capital of at least $500,000.00 and a net surplus of at least $500,000.00 paid up and free from promotion and organization expenses, all in accordance with printed prospectus issued by them and delivered to me.

"And whereas by their acceptance of this subscription said Stuart, Walker & Company, agree to endeavor with all reasonable diligence to accomplish on or before December 31st, 1909, the organization of said corporation with capital stock and surplus fully paid as aforesaid, they defraying all expenses of promotion and incorporation:

"Now, therefore, I do hereby subscribe for fifty shares, of the par value of $10.00 each, of the capital stock of said the American Home Life Insurance Company, and I do hereby agree with said company and with the said Stuart, Walker & Company to pay therefor the sum of $1,500.00 as follows: The sum of $1,250.00 I agree to pay to said the American Home Life Insurance Company, at any time after May 1, 1909, immediately upon notice from said Stuart, Walker & Company that said company had been duly incorporated and that its capital stock had been subscribed in good faith in amounts and at the price netting the company at least $500,000.00 of capital and at least $500,000.00 surplus in the aggregate when paid. The remaining sum of $250.00 I agree to pay, concurrent with this subscription to the said Stuart, Walker & Company in consideration of their agreement hereinbefore recited and in lieu of any further or other contribution to the expenses of promoting and incorporating said company.

"Witness my hand this the 22d day of April, 1909.

"M. H. Compere, Name of Subscriber.

"Abilene, Texas, P. O. Address."

"Subject to loan of $2,500.00 made on collateral acceptable to the finance committee at the rate of six per cent per annum for from 1 to 5 years as may be desired by applicant."

At the time of the execution of this stock subscription contract, appellee paid the $250 advance payment therein provided for and received from Stuart, Walker & Co. the following receipt:

"Number 246. Amount Paid, $250.00. Total Subscription, $1,500.00.

"Abilene, Texas, Apr. 22, 1909.

"Received of M. H. Compere of Abilene, Texas, the sum of two hundred and fifty & no-100 dollars as part payment for 50 shares of stock in the American Home Life Insurance Company of Fort Worth, Texas, as set forth in his subscription application No.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2501, bearing even date herewith. Should said subscription be not approved and accepted, the amount as per this receipt will be returned.

"Stuart, Walker & Company,
　　　　"By G. J. Brothers, Secy.
"Not valid unless countersigned by W. T. Coleman, Salesman."

Thereafter, on April 21, 1910, appellee instituted this suit against Stuart, Walker & Co., the American Home Life Insurance Company, and others not necessary to name inasmuch as they were later dismissed from the suit, alleging that Stuart, Walker & Co. had induced the execution of the stock subscription contract and had executed the receipt quoted as promoters of the insurance company to be thereafter organized, promising that if plaintiff would so subscribe for stock that the insurance company, when organized, would loan to the plaintiff the sum of $2,500 at the rate of 6 per cent. interest per annum for a period of from one to five years as might be desired by the plaintiff. It was further alleged that the American Home Life Insurance Company thereafter became duly organized, offered to issue stock in said company to the plaintiff and others whose stock subscriptions had been solicited and obtained by Stuart, Walker & Co., and in other ways did "fully ratify, indorse, and approve of all the acts of the said agent in the premises," and thereafter "agreed to make said loan and to carry out the agreement made by said parties with plaintiff," but that, after repeated applications made in accordance with the terms of the agreement made between him and the said Stuart, Walker & Co., the said insurance company "upon some excuse and pretext and another and from time to time put off and for an unreasonable length of time refused to make such loan, and demanded of plaintiff that he pay the other amount of $1,250 aforesaid upon the stock, and finally failed and refused to make such loan to plaintiff and failed and refused to pay back to plaintiff the said sum of money so advanced." The prayer was for the recovery of the advance payment of $250, with interest thereon, etc., as well also as for certain damages, to which the court sustained an exception, and which hence we need not notice.

Upon the conclusion of the evidence the court gave a peremptory instruction in favor of the American Home Life Insurance Company but submitted the case to the jury as between the plaintiff and appellant R. T. Stuart and C. W. Walker, composing the firm of Stuart, Walker & Co. on the issue embodied in the following charge: "You are further instructed that if you believe from the evidence that the defendant American Home Life Insurance Company did not, in good faith, approve and accept the subscription of stock in question, and did not in good faith intend to make the loan under the terms mentioned in said contract, you will find for the plaintiff against the defendants Stuart, Walker & Co. for $250, with 6 per cent. interest from November 3, 1909; but if you believe from the evidence that the American Home Life Insurance Company did approve and accept the subscription for the stock signed by plaintiff in good faith, intending to make the loan under the terms above mentioned, provided plaintiff furnish security satisfactory to the American Home Life Insurance Company, then you will find for the defendants."

The verdict and judgment was in appellee's favor as against Stuart, Walker & Co. and also in favor of the American Home Life Insurance Company against the plaintiff's cause of action and as against a cross-plea presented by Stuart, Walker & Co., which in view of the disposition we have made of the case we do not think it necessary to further notice.

Appellants have assigned error to the court's charge on the ground that it submitted an issue not made by either the pleadings or evidence, and we think the assignment must be sustained. If, as presented in the charge quoted, the subscription contract was not accepted in good faith by the American Home Life Insurance Company, the plaintiff was entitled to recover as he did under the very terms of appellants' receipt for the money received; a good faith acceptance being necessarily implied in appellants' undertaking. But no such issue is presented in plaintiff's pleadings.

[1] The plaintiff's petition is susceptible to no other construction than that he alleges that the insurance company, after its organization and as contemplated in his subscription contract, accepted the contract, and one or more of its officers so testified. If so, the American Home Life Insurance Company adopted the act of its promoters as its own and took the contract with its burdens as well as its benefits; among the burdens being the obligation to make the loan specified in the subscription contract. W. M. W. & Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837. The failure, therefore, to make the loan under the circumstances alleged constituted but a breach of the contract on the part of the insurance company. Such breach, if any, would entitle the plaintiff, as against the insurance company, to damages or to a rescission of the subscription contract with a recovery of the money advanced thereon.

Because the case was tried and submitted upon a theory not presented in the pleadings, the judgment is reversed, and the cause remanded for a new trial.

## On Motion for Rehearing.

[2] In deference to the very earnest and skillful presentation of the motion for re-

hearing, we have again examined the record with great care but find no reason to alter our former conclusion. Appellee's petitions as a whole do not present a case of nonacceptance of the subscription contract sued upon on the part of the appellant insurance company. On the contrary, in the original and supplemental petitions are reiterated averments that such contract was accepted, nor is such acceptance specially denied in the answers of appellants. There were general denials by all of them, but each presented special pleas based upon the theory that the insurance company after its organization "accepted, approved, ratified, and adopted" the contract. The insurance company answered that, after the corporation had been organized, "it offered to accept the subscription contract of said M. H. Compere, plaintiff, and to issue to plaintiff the stock subscription by the said Compere and to loan to plaintiff the sum of $2,500 upon the terms and conditions stipulated in the subscription contract." Again: "That the defendant (the insurance company) has at all times been willing and anxious to make the loan to the said Compere Bros., and is still willing to do so and now offers, if the said Compere Bros. still desire to carry out the contract and take the stock for which they subscribed, to loan to the said Compere Bros. the sum of $5,000 for the period of five years, with interest at the rate of 6 per cent. per annum, provided the said Compere Bros. will secure the same by mortgage upon real estate which is acceptable to the finance committee and to which they have good titles," etc. It is true that appellee in his supplemental petition has an averment to the effect that, if he be mistaken as to the fact alleged that the insurance company had accepted the contract, then he prays in the alternative for a judgment against Stuart, Walker & Co., but we do not think that such averments, in the light of the petition as a whole, can support the issue submitted in the court's charge. It is certainly clear that nothing in any of the pleadings raises the issue of a pretended, simulated, or bad-faith acceptance on the part of the insurance company, and when we refer to the statement of facts we find the matter yet more clear, if possible.

But three witnesses testified:

R. T. Stuart testified that after the organization of the insurance company he became its president and said: "When the American Home Life Insurance Company was organized, those contracts were turned over to the company and accepted by them, I suppose; they were all turned over to the company. I suppose this particular contract was accepted by the company." Here Judge Bell for the company "admitted that the particular contract was accepted by the company." Again he testifies: "The company received, as far as I know, this particular stock subscription of Compere, and it received the benefit of the promotion and organization of the company by Stuart, Walker & Co. * * * The Home Life Insurance Company to my knowledge never repudiated at any time any of the actions of the agent; anything that was done by the promoters in the work of the organization, selling of stock, and the advertising; no objections that I know of."

T. B. Yarborough, who testified that he was a vice president of the First National Bank and was elected treasurer of the Home Life Insurance Company when it was organized on the 3d of May, 1909: "I guess we accepted the contracts of Stuart, Walker & Co. in the condition they were in at the time the company was organized. There was never any objection to them that I know of. The company undertook to carry out those contracts according to the terms of them. * * * At the time this application blank here (the stock subscription sued upon) was turned over to the company, I took it for granted that we were to collect the $1,250, the balance due the Home Life Insurance Company under the subscription; we would have to comply with this contract before we collected that $1,250; we would have to make a loan of $2,500. * * * I knew there was stock on which he (Compere) had already paid $250; I knew that the subscription blank says he paid Stuart, Walker & Co. and agreed that that was organization expenses. * * * These different subscriptions have been turned over to me, as treasurer of the company, for the purpose of being collected. I know the plaintiff in this case and on the 6th of May notified him to pay up his subscription. * * * Up to the time that the property was found to be a homestead, I had agreed to make them a loan of $5,000 at 6 per cent. The only thing that was in the way at that time was the title; the fact that it was a homestead. The company has been ready, provided the title to the property was pronounced satisfactory to make the loan from that time to this. We offered to do so in our pleadings. I have been treasurer of the Home Life Insurance Company since its organization."

The remaining testimony is that of the appellee M. H. Compere and numerous letters passing between the appellee and Mr. Yarborough extending from May 6, 1909, to November 3, 1909, none of which tends to raise the issue of a failure on the part of the insurance company to accept the subscription contract sued upon. The entire burden of the correspondence was with reference to the loan; it appearing that the property first offered as security was claimed to be a homestead by Mr. Yarborough, and there being long delays relating to other property offered as security, until finally on November 3d the appellee wrote demanding

a. return of the amount paid on his subscription contract declining to further prosecute his efforts to secure the loan. It may be that the evidence would support the conclusion that the insurance company, after its acceptance of the subscription contract in question, did not in good faith attempt to make the loan as therein provided, but that issue and the legal consequences that would follow its determination in appellee's favor was not presented in the court's charge. The recovery was upon no such theory, so that we can but reiterate our former conclusion that the court erred in submitting "an issue not made by either the pleading or evidence," as appellant assigned.

The motion for rehearing is accordingly overruled.