COMMONWEALTH BONDING & CASUAL-
TY INS. CO. v. CURRY et al.*
(No. 884.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 19, 1916. Rehearing Denied
Feb. 23, 1916.)

1. CORPORATIONS ☞448—PROMOTER'S AGREE-
MENT—EFFECT OF.

The promoter of two corporations sold plaintiffs stock in one of them; plaintiffs giving two notes for the purchase price, one of which was to constitute part of the surplus. The di-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

183 S.W.—1    *Application for writ of error pending in Supreme Court.

rectorate of the two corporations and the officers were practically the same, and thereafter defendant corporation, in which plaintiffs refused to purchase stock, having ratified the promoter's contracts, received without consideration the note which was to constitute part of the surplus of the other. *Held,* that in such case, defendant corporation in accepting the benefits of the promoter's contract accepted its burdens, and, not being a bona fide holder of the note, the promoter's contract could be proven in an action to cancel the note.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. ☞ 448.]

2. EVIDENCE ☞471 — CONCLUSION OF WITNESSES—ADMISSIBILITY.

In such case, the promoter might testify that defendant understood the plan of organization after it was incorporated; such testimony not being a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. ☞471; Witnesses, Cent. Dig. §§ 833–836.]

3. CORPORATIONS ☞170—STOCK—SUBSCRIPTIONS.

In such case, as plaintiffs refused to purchase stock in defendant corporation, the fact that it obtained possession of their note and issued stock to them does not make them shareholders; for, in order to charge subscribers, it must appear that their subscriptions were made to the particular corporation on account of which liability is claimed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. ☞170.]

4. CORPORATIONS ☞92 — SUBSCRIPTION TO STOCK—NOTES—VALIDITY—FAILURE OF CONSIDERATION—ESTOPPEL.

Plaintiffs, who purchased stock in the B. Company, executed two notes, one for the par value of the stock and the other for its surplus. The stock was issued, but the surplus note was delivered to defendant, another corporation; defendant issuing its own stock to plaintiffs receiving as collateral the stock of the B. Company. Plaintiffs thereafter assigned defendant's stock. *Held* that, as the issue of defendant's stock was invalid, plaintiffs, though estopped from setting up fraud or denying their subscription, might secure cancellation of the note for the surplus, and recover either the stock of the B. Company received for the par value note, or its face value, on the ground of want of consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 366; Dec. Dig. ☞92.]

5. CORPORATIONS ☞92 — PURCHASES OF STOCK—RATIFICATION—ESTOPPEL.

As Const. art. 12, § 6, forbids the issuing of stock save for money actually paid, a transaction whereby corporate stock is issued in consideration of a note cannot be ratified, and furnishes no basis for estoppel.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 366; Dec. Dig. ☞92.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by Thomas and J. J. Curry against the Commonwealth Bonding & Casualty Insurance Company and another. From a judgment for plaintiffs, the named defendant appeals. Affirmed.

Speer & Brown, of Ft. Worth, and A. A. Lumpkin, of Amarillo, for appellant. Kimbrough, Underwood & Jackson, of Amarillo, and H. A. Turner, of·Ft. Worth, for appellees.

HALL, J. Thomas and J. J. Curry filed this suit against the appellant company and R. T. Stuart, seeking to cancel a certain promissory note, in the sum of $1,875, and to require the delivery to them of 62½ one-tenth shares of stock in the Bankers' Trust Company, alleged to be in the possession of the defendant, Commonwealth Bonding & Casualty Insurance Company. They prayed in the alternative for judgment for the value of said stock, in the sum of $625. It is alleged that the contract for the purchase of this stock was entered into with R. T. Stuart, in August, 1910; that payment therefor was made by one note for $625 and the note for $1,875, mentioned above, and that said stock in the Bankers' Trust Company was to be issued and attached to the last-named note as security; that they refused to purchase, and would not purchase, stock in the said Commonwealth Company. The grounds alleged as a basis for the cancellation of the note and the recovery of the stock, or its value, were that Stuart, as agent and promoter of the Bankers' Trust Company, fraudulently induced plaintiffs to take stock in the Bankers' Trust Company and to execute in payment therefor the notes above described; that said Stuart subsequently fraudulently delivered the note for $1,875 to the defendant Commonwealth Bonding & Casualty Insurance Company, together with plaintiff's stock in said Bankers' Trust Company, which was attached to said note as collateral. The particular allegations of fraud are that Stuart represented that the Bankers' Trust Company would be organized under the laws of Texas with a capital stock of $100,000, and a surplus of $300,000, for the purpose of loaning, borrowing, and reloaning money on real estate in Texas, and that said Trust Company and said Stuart would furnish to plaintiffs $100,000 in loans, according to the proposed plan. It was further alleged that the Bankers' Trust Company, when organized, had a capital stock of only $100,000, and that it had no surplus fund whatever, whereby plaintiff's stock in said company was worth only $625, instead of $2,500 as it would have been had said company possessed a surplus of $300,000; that plaintiffs had procured customers who desired to borrow money on good and sufficient securities, and that application was made to defendant Stuart to furnish such money with which to supply such customers; but that said Stuart and Bankers' Trust Company refused to furnish any money whatever. That the officers and managers of the said Commonwealth Company knew that plaintiffs had not subscribed for stock in said company; and that, on learning that the said Commonwealth Company held their note for which it had issued to them its stock. plaintiffs immediately notified it of said false and fraudulent representations made to them, and informed it that they

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

would not accept stock in it and would not pay therefor, and demanded the release, cancellation, and delivery to them of said note.

The Commonwealth Company answered, denying specially plaintiffs' allegations of fraud and notice; alleging that it purchased said note of $1,875 from the Bankers' Trust Company for a valuable consideration before maturity and in the regular course of trade, without knowledge of any fraudulent representations made to the plaintiffs by any person, and without knowledge of any infirmity, and was therefore an innocent holder thereof, together with the securities attached to the same. Further, by way of estoppel, it is alleged that the plaintiffs, after the issuance to them of its stock, and after the purchase by it of plaintiffs' said note, and after plaintiffs were notified and after plaintiffs had full knowledge of the issuance to them of the stock in the defendant company, and of its ownership of their said note, plaintiffs exercised and asserted ownership of and title to said certificate of stock, and waived any right to complain of the matters set forth in their petition.

By supplemental petition, plaintiffs pleaded that they never knew of the issuance of stock in the Commonwealth Company at the time of its issuance and for a long time thereafter; that they never at any time, with knowledge of the facts, asserted ownership or title to said stock, nor gave defendant company any instruction as to the management or disposition of said stock; that if any such instruction was received from plaintiffs it was procured by misrepresentation, fraud, and concealment; that at the time this note was delivered to defendant it knew the purpose and consideration for which said note was given; that it was given in payment of stock; that the transaction was illegal and void, and that the issuance of stock by the Commonwealth Company for and in consideration of the delivery to them of the note in controversy, was a transaction illegal and void; that the consideration for which said note was given had utterly and totally failed, in that the Bankers' Trust Company was not organized so that its capital stock would be worth four for one, but was organized with only $100,000 capital and without any surplus, so that its stock was only worth the face value.

The case was tried before a jury and submitted on special issues. Upon plaintiffs' motion for judgment, the court decreed the cancellation of the note, rendered judgment against the Commonwealth Company for the delivery and possession to them of the shares of stock, and in the alternative, that if said shares of stock were not delivered to plaintiffs they should recover from the Commonwealth Company the sum of $625, with 6 per cent. interest from date.

[1] It is insisted that the court erred in permitting Thomas Curry to testify, over appellant's objection, that he told R. T. Stuart, the promoter of the two companies, that he did not want any stock in the Commonwealth Company; that Stuart had told him that $300,000 surplus had been paid into the Bankers' Trust Company; that the company would loan money to Curry's customers at 1 per cent. more than it cost the company to get it, taking deeds of trust on Western lands as security for the loans; that the company would be a Texas corporation and that the said Bankers' Trust Company would buy stock in the Commonwealth Company to such an extent as would enable the first-named company to control the latter. The objection urged was that Stuart was a promoter and his representations could not bind the company until it was shown that the company had notice. Stuart testified that before the completion of the sale of the stock of the two companies, the stockholders thereof had a meeting and entered into temporary organization of the Commonwealth Company, at which time Mr. Scarborough was elected president, Mr. Mills, secretary, Mr. Brandon, treasurer, and Mr. Harkrider, active vice president. That when the Bankers' Trust Company was organized Stuart was elected president and Scarborough and Harkrider, vice presidents. That he did not know whether Mills was a nominal vice president or not, but that he was one of the directors; that Brandon was also a director; that after the Commonwealth Company was chartered, he (Stuart) was a director, and sometimes met with the other directors; that after the organization was perfected, the same officers were elected, with additional directors; and after organization, the company took over the contracts and notes of the temporary organization and ratified them. They understood the plan of the organization of the two companies, were parties to it, and all were stockholders in the Bankers' Trust Company; some of them being also officials. This was sufficient to raise the issue of notice and prove ratification on the part of the company after its organization; and the objection was properly overruled. It was further shown that the Commonwealth Company never paid any consideration for the note and was not a bona fide holder. The jury found that the Commonwealth Company knew the note for $1,875 was to be and constitute a part of the surplus of the Bankers' Trust Company, at the time they accepted the note; and this finding is not directly assailed by the appellants. Under these conditions, we think the appellant company, in accepting the benefits of the contract, must also take over its burdens, and is bound by the representations and promises of Stuart, the promoter. American Home Life Insurance Co. v. Compere, 159 S. W. 79.

[2] Appellant further insists that the court erred in permitting the witness Stuart to testify that the Commonwealth Company un-

derstood the plan of organization after it was incorporated. The objection was made that such a statement was a conclusion of the witness. We think the trial court was correct in its ruling, and that the witness merely stated a fact. Rotan Grocery Co. v. Tatum, 149 S. W. 342; First State Bank & Trust Company of Hereford v. Southwestern Engineering & Const. Co., 153 S. W. 680.

[3] Under the fifth assignment it is contended that the court should have directed a verdict in favor of appellant because the evidence failed to establish fraud and sustain the plaintiffs' allegations. It is true, fraud is alleged; but fraud is not the sole issue set up by plaintiffs, upon which they would be entitled to recover. They alleged a failure of consideration, and that they refused to purchase stock in the Commonwealth Company. Thomas Curry testified that they told Stuart they would not purchase stock in the Commonwealth Company. Stuart testified that neither he nor the Bankers' Trust Company received any consideration from the Commonwealth Company; that the note was never turned into the Bankers' Trust Company as a part of its $300,000 surplus; and that the proceeds of none of the notes of the various subscribers have gone into such surplus; that the Bankers' Trust Company was never organized with a surplus fund of any amount. Stuart further testified that he had no authority to turn these notes over to the Commonwealth Company or to have stock issued to plaintiffs individually. It is uncontroverted that the plaintiffs, at no time, subscribed for, or contracted to purchase, stock in the Commonwealth Bonding & Casualty Insurance Company; that the issuance of said stock in the name of J. J. Curry, for the note executed by plaintiffs, and made payable to Stuart, as trustee, was not in compliance with the contract signed by plaintiffs, and not in accord with the understanding between Stuart and plaintiffs; nor was it in accordance with the agreement between Stuart and Mills. In the light of this testimony, the court would have erred in peremptorily instructing a verdict in favor of appellants. In Thompson on Corporations, par. 513, it is said:

"In order to charge subscribers, it must appear that their subscriptions were made to the particular corporation on account of which the liability is claimed, or that they have in some manner recognized their liability."

Id. par. 45:

"The rule is not only founded in reason, but it has been expressly decided, that no person can be made a stockholder of a corporation without his consent, express or implied."

The further point is raised by appellees that the Commonwealth Company issued its stock to them and that the only consideration therefor was the note in controversy. This note was intended by the makers to be turned into the Bankers' Trust Company, and, when paid, to be a part of the proposed $300,000 surplus of that company. It had been diverted by Stuart, and taken by the Commonwealth Company in payment for shares of stock issued by that company. If it was understood that the note was taken in payment for the stock, both the note and the stock are clearly void, under the Constitution. Mason v. Bank, 156 S. W. 366; Sturdevant v. Falvey, 176 S. W. 908; San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174. The transaction as between Curry and the Commonwealth Company cannot be considered as a subscription for stock, since they positively refused, when solicited by Stuart to do so, to take any stock in that company. So we think, regardless of the question of fraudulent representations, the issues should have been submitted to the jury.

[4] Appellant contends that because Thos. and J. J. Curry executed an instrument, assigning 48.8 shares of stock in the Commonwealth Bonding & Casualty Insurance Company, to the Bankers' Guaranty Company, reciting that it was all the stock they owned, and in the same instrument appointed one Allen to make the transfer on the books of the corporation, they are estopped to recover the $625 paid, or to cancel the $1,875 note, and have thereby waived the right to set up fraud. This contention is the fourth proposition under the fifth assignment. The fifth assignment is that the court erred in refusing to direct a verdict for the appellant company. If we should concede that the proposition is a correct statement of the law, we think appellees were entitled to cancellation of the note for $1,875, upon the ground of failure of consideration, regardless of the question of fraud. Furthermore, they would be entitled to recover as damages the value of the stock for which they had paid $625, even though the transfer should be treated as an affirmance of the act of the Commonwealth Company in issuing the stock. Grabenheimer v. Blum, 63 Tex. 369.

[5] The act of appellees in executing the transfer of the shares of stock as one of the elements of an estoppel cannot be relied upon as such by the Commonwealth Company. The issuance of the stock, in consideration of the note, being an illegal transaction, and inhibited by the Constitution (article 12, § 6), cannot be ratified. State Nat. Bank v. Fink, 24 S. W. 939; Rue v. Ry. Co., 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; Elliott on Contracts, §§ 457, 1091.

What is here said disposes of the various contentions in appellant's brief. We find no reversible error, and the judgment is affirmed.