### GEISER MFG. CO. et al. v. LUNSFORD et al.

(Court of Civil Appeals of Texas. San Antonio. June 7, 1911. On Motion for Rehearing, July 1, 1911.)

1. SALES (§ 116*)—RESCISSION OF CONTRACT—RESCISSION BY BUYER.

Where the seller of a steam plow induced the buyer to accept an old machine by representing that it was as good as new, and, without any intention of ever performing his promise, promising to make it as good as new and to supply any missing parts, the buyer may rescind the contract if the seller refuses to perform his promise.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 290; Dec. Dig. § 116.*]

2. SALES (§ 121*) — RESCISSION — RESCISSION BY BUYER.

Where the buyer of a steam plow accepted an old machine upon the seller's representation that it was as good as new and that he would make it right if there was anything wrong, and the buyer continued to use the machine after he found that it was not in good order, the fact that the seller continued to promise to supply new parts and if then found unsatisfactory, to deliver a new machine, would, in equity, prevent the buyer's continued use of the machine from forfeiting his right to rescind the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. § 121.*]

3. SALES (§ 130*) — RESCISSION — RESCISSION BY BUYER—EVIDENCE.

In an action for the rescission of a contract, evidence *held* to show that there was a sale and acceptance of a steam plow in question, with the knowledge on the part of plaintiffs that it was not a new one, but on promises by defendant that it should be made perfect.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 130.*]

4. SALES (§ 121*) — RESCISSION — RESCISSION BY BUYER.

Where a buyer, with knowledge that a steam plow was not a new one such as he had bought, accepted the plow, he has no right to rescind.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. § 121.*]

5. SALES (§ 121*) — RESCISSION — RESCISSION BY BUYER.

Where the buyer accepted an old, defective steam plow in the place of a new one which he had purchased, upon the promise of the seller that it would be made perfect, and retained that plow and used it after the seller had denied making the promise and refused to fix the machine, the buyer is not entitled to rescind his contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. § 121.*]

Error from District Court, Hale County; L. S. Kinder, Judge.

Action by J. W. Lunsford and others against the Geiser Manufacturing Company and others. Judgment for plaintiffs, and defendants bring error. Reversed and rendered.

L. W. Dalton, for plaintiffs in error. L. C. Penry, for defendants in error.

JAMES, C. J. The petition of J. W. Lunsford and C. T. Doane against defendants, the Geiser Manufacturing Co., the First National Bank of Plainview, and E. A. Harp, alleged, in substance, that the Geiser Manufacturing Company is a foreign corporation, without permit to do business in Texas and without property in Texas; that on March 23, 1908, plaintiffs agreed to buy from said Manufacturing Company a complete new steam-plow outfit, for which they executed to said Manufacturing Company their six certain negotiable notes, and in connection with same gave

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

a mortgage lien on certain horses, and assigned certain collaterals consisting of vendor's lien notes on certain land, two of which notes executed by plaintiffs to said Manufacturing Company, and three of said collateral notes are now in the hands of the defendant National Bank; that after the execution of said six notes and the giving of said mortgage and collaterals the said Manufacturing Company delivered to plaintiffs a steam-plow outfit, which plaintiffs found not to be new or complete; that at the time of delivery of same plaintiffs rejected the same as not complete and not what they had bought, whereupon said company falsely represented to plaintiffs that it was new and complete, and had not been used except for demonstration purposes, and had not plowed over 40 acres, and that if there were any parts impaired, defective, or missing that the same would be at once supplied; that attention was called to the fact that the engine had no extension cab as specified it should have, and that there were no extra shares or stubble bottoms with said outfit, and that same appeared to be worn, whereupon defendant promised and agreed to furnish said parts at once; that relying upon said representations, promises, and agreements, plaintiffs took possession of said outfit, and attempted to use the same, and found that it was old and worn out, that the boiler flues leaked and were unfit for use, that the fire box was not complete, in that the fire brick which belonged to a machine of that kind were not there, and that divers and sundry other defects were discovered that were material, and which could not be seen or discovered until plaintiffs tried to use the same; that they immediately reported the facts to said Manufacturing Company and demanded that it ship them a new plow and engine, that they could not use this one and insisted on a new outfit, and that notwithstanding said demands and agreement defendant failed and refused to ship the necessary parts, and failed and refused to ship them a new outfit; that but for the said representations plaintiffs would never have taken, or attempted to use the same, which defendant well knew; that defendant has from time to time requested plaintiffs to continue to use it until it could send the extra and missing parts, and that if not then found satisfactory that it would ship plaintiffs a new outfit; that plaintiffs have at great loss of time and money tried to use the machinery, but the same is worthless and unfit for use—all of which said Manufacturing Company well knew, and that the consideration for said notes has wholly failed.

The petition alleged further that at the time plaintiffs bargained for the plow outfit they, at the instance of the said Manufacturing Company, made a contract with defendant Harp, who agreed to furnish 1,500 acres of breaking at a certain rate per acre,

part of which sum was to go to the Geiser Manufacturing Company; that said contract with Harp was made before the purchase of said machinery by plaintiffs at the instance of and for the better securing of said Manufacturing Company, and the making of such contract was known and understood at the time as a special inducement to plaintiffs to make said purchase; that plaintiffs are informed and believe and so allege that Harp and said Manufacturing Company have a mutual interest in plaintiffs' contract for said machinery and in the notes executed by plaintiffs to said company, and that Harp claims to have some interest in said notes; that as soon as plaintiffs discovered that defendant Manufacturing Company had willfully and wantonly deceived them and did not in fact intend to deliver to them either a new steam plow or to make good the one in question, they tendered, and do now tender and offer to return, the same to said company, and that such use as they have had of the same has not been beneficial to plaintiffs, but should the court consider that plaintiffs should account for the same they stand ready to do so; that plaintiffs have plowed for Harp 235 acres of land, that Harp has withheld and still withholds from plaintiffs $220 due these plaintiffs under said contract, and plaintiffs allege that he holds said sum for the Geiser Manufacturing Company and, unless restrained from doing so, will pay it to said company and leave plaintiffs without adequate remedy therefor; that the defendant Manufacturing Company has sent to the First National Bank of Plainview for collection the first two of plaintiffs' notes. Wherefore plaintiffs pray for a writ of injunction directing and enjoining said bank to hold said notes subject to the further order of the court, for a writ of injunction directing and enjoining defendant Harp not to pay said $220 to the defendant Manufacturing Company subject to the further order of the court; that plaintiffs have judgment against the Geiser Manufacturing Company canceling the contract for the purchase of said machinery, also the plaintiffs' notes, and that defendant be required to receive back the machinery; and, further, for judgment canceling the mortgage liens on the horses, and for the title and possession of the three vendor's lien collateral notes, and for judgment for the $220 held by Harp.

The temporary injunction was granted as prayed for.

The Geiser Manufacturing Company answered by general demurrer and denial, and specially answered that the sale of the machinery was an interstate order or sale to one E. J. Terry from its places of business in Kansas City and Waynesboro, Pa., and took it back from Terry to sell it and relieved Terry's estate of the debt. Also denied that it sold plaintiffs defective machinery, or falsely represented anything in re-

gard to same, but if the same was defective or there were false representations as alleged, that plaintiffs, with full knowledge of the same and of the falsity of the representations, accepted the same and used it, and treated the contract as binding, and elected to hold under the contract, and were not entitled to rescission. There was a verdict for plaintiffs "for a rescission of the contract; * * * that plaintiffs are entitled to a cancellation of all the notes; * *, * and that they are entitled to have the chattel mortgage, as described in their petition, returned and canceled; * * * to have returned to them the three vendor's lien notes now in the possession of the First National Bank of Plainview, Tex." Judgment was entered accordingly.

[1] We have set forth the allegations of the petition in order to show upon what plaintiffs based their suit for rescission of the contract. The material averments are that, after plaintiffs had executed the papers for the purchase of a new steam-plow outfit, they were taken out and shown the machine, which plaintiffs then and there rejected because not new or complete, and not what they purchased, but that they took the same, upon the false and fraudulent representation that it was new and complete and had been slightly used for demonstration purposes, and upon the promise that any defective or missing parts would be supplied at once, and upon the promise to furnish certain named parts then and there found to be missing, at once; that when they attempted to use the machine they found the same to be old and worn out and in important parts incomplete and unfit for use; that they immediately reported said facts to defendant company and demanded a new outfit, and defendant failed and refused to furnish the missing parts and failed and refused to ship them a new machine; that defendant from time to time requested plaintiffs to continue using the outfit until it should supply the extra or missing parts, and promised that if not then found satisfactory that it would ship plaintiffs a new outfit, and that at great loss of time and money plaintiffs have tried to use the machinery, but the same is useless and unfit for use; that as soon as plaintiffs discovered that defendant had willfully and wantonly deceived them, and that it did not in fact intend to deliver them a new plow, or to make good the one in question, plaintiffs tendered and now tender to return the same. Upon the allegations a theory upon which a suit for rescission could rest would be the fact that the promises of defendant's representative, by which plaintiffs were induced to receive a machine they had not bought, were falsely made without intention at the time of performing them. This would constitute such fraud as would authorize a rescission, upon its discovery. Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

[2] And we think the further fact alleged in excuse of plaintiffs continuing to use the machine after discovery of the fraud, to wit, the request of defendant for them to do so coupled with renewed promises to supply the parts and if then found unsatisfactory to deliver a new machine, would in equity be sufficient to excuse conduct which otherwise would be a bar to a suit for rescission.

[3] It is the contention of appellant that the evidence was such that plaintiffs' remedy would be for damages merely, and that their conduct with regard to the machine estopped them from invoking the remedy of rescission. If appellant is right in this, it will require a reversal of the judgment. We, therefore, consider the evidence.

The testimony of plaintiff Lunsford was that after the papers were executed, they went with Elder, who made the sale to them, and were shown the plow he proposed to give them, and it was instantly rejected as not being what they had bought. Plaintiffs saw and knew that it was not a new machine and was defective and incomplete; but Elder induced them to take it, by saying that he would see that the plow was made as good as a new one, or would ship a new plow, and agreed to pay plaintiffs so much a day for all the time they put in in repairing it, and agreed to furnish a complete set of new hose, water tank, and other things. This witness stated: "The verbal agreement between us was that we were to have everything necessary to make that plow a first-class plow; that is what we were to have. And he further proposed that if it couldn't be made so, he would ship us a new plow." Elder took down a list of the things necessary to make the plow new. As to what occurred after they took the plow, this witness stated: "Well, taking Mr. Elder as a man of his word, we accepted his proposition, came back to Plainview, and went out to start to plowing and cleaned the outfit up. We had three men working five days. We found the flues all leaking, and had to go back to Amarillo and get a flue expander. The grates were burned in two and we had to patch them up. And a number of other things we had to do, and among them was to put on a pump. We knew that was broke, for he told us it was. The pump froze and bursted, but he gave us an order for that, and we got it and put it on. And I think it was the second day we ran it that I wired him to send a man to accept the machine, for it was there for them. I sent the message from the office at the depot here in Plainview, and I never got any answer from him only a letter a few days afterwards notifying me that I had better pay a little more attention to my work. I wired and wrote for these repairs that never came."

Again he testified: "I had wired them to send a man to come and get the plow, because I was disgusted with it, and didn't want to keep it in any case. It wasn't what I

bought, and I couldn't make it, according to the contract, as good as a new one. In the letter of March 31, 1908, it makes some reference to some glass—that is, lights for the headlights we were to have. We never got that. I don't remember how long it was after I notified them by wire to send a man and get the machine before I wrote them about it. . I wrote them every time I got to where there was paper and pen. I don't remember how long it was, but a day or two though. In my correspondence I made mention of what the trouble was. I told them what I needed. I sent them a list two or three times. * * * When I wrote about these things, I did not receive what I called for. I never received any of the things I wrote for."

Again: "I had operated the machine as long as I could keep it together, and that was a very short time, because I couldn't get any repairs from these people, and the reason I operated it was for the simple fact that I didn't know what else to do at the time, thinking that these people would finally do what they agreed to do. And I continued to operate it under my agreement with Mr. Elder. We were to do the best we could with it, and if it wasn't all right they would make it all .right. That is the reason I continued to use it."

Again: "I think I had a letter from Mr. Elder in June [the true date was May 25th] writing me for a list, asking me for a list of what I wanted, stating that if he shipped it without a list he would just be guessing at it, and in reply to that letter I wrote him and told him that I would again send him another list, without any view whatever of getting any of the repairs, but I would send him another list as he requested, and I did so and never got any repairs or answer to that letter."

Again: "We commenced about the 1st of April and left Mr. Harp's place the 1st of June. * * * After we got through ploughing for Harp we went to Mr. Morgan's. It was on the 8th of June I believe. During the months of April and May we worked at Harp's. No, sir; we plowed every day we could plow when we were not working on the machine. * * * We went to Morgan's somewhere about June 8th; * * * it took a month to do that plowing. * * * We left Morgan's about the 1st of July or the 25th of June. * * * About that time, along about the 1st of April I knew the plow was no account and all these parts wrong. I knew that when I came down and went over the plow. I knew that on the 1st day of April when I went to plowing for Mr. Harp."

Again: "The machinery is here in Hale county. * * * We just abandoned it. * * * It is out here in the country. We just abandoned it. I don't know that we have used it since the filing of this suit any more than any one else. It is out here in the country."

The testimony of plaintiff Doane is brief and as far as it goes accords with that of Lunsford.

In addition to the oral testimony there was correspondence. On April 26th plaintiff had an attorney write defendant a letter to the effect that Elder had misrepresented the plow outfit, and had taken their notes for $4,500; that the machine was not as good as new, is only worth about $2,000, and only worth about $2,500 less than what was bought and sold to them without seeing it; that they had consulted attorneys and intended to bring suit against defendant at once unless they put this machinery in proper order at once. Defendant, through Elder, replied to such letter on May 7th, in effect denying that the outfit had been sold to them without seeing it, and that it was delivered them just as they bought it, and advised them to get in line and keep the machinery working and pay their notes when due. On May 25th plaintiffs wrote defendant to let them know how they were getting along; that it had been so dry that they had plowed but little, and complained of Harp's not paying them, and on that account they were not in a position to meet their first note, etc. On May 31st they wrote Elder stating: "Yours of the 25th received. You forgot that you have answered this letter once before; that you indicated to us that you did not think it necessary to send this stuff;" stating further that they had been dragging along with what they had, and decided that he was not going to send anything to them; that they had quit Harp on account of his refusal to pay, and were plowing for Morgan, and suggested that Elder come down and collect for them the amount of the plowing and give them credit on the note for the same; that they wanted "what they bought, and expected to get what they bought, or we consider that we have the worst of the deal and have a right to damages." On June 19th defendant wrote them that their first two notes were at the bank for collection and to call and take them up. On June 27th plaintiffs wrote defendant that they had failed to send their land notes which were collaterals, and to send same to the bank, and the matter would be attended to at once. On July 17th the collateral notes were sent to the bank, and on July 23d the petition for rescission was filed in this cause.

The testimony shows clearly that there was a sale of and an acceptance of the plow outfit in question as the subject-matter of the sale with knowledge on the part of plaintiffs that it was not a new or perfect one. They took it, however, on the promise or agreement of defendant to supply everything necessary to make it a first-class plow, and, if it could not be made so, that they would be furnished a new one. This promise entered into the contract and became a part

of it. It may possibly be said that the contract as evidenced by the writings was conditioned on the performance by defendant of said promises; and that the failure or refusal by defendant to substantially perform them, would give plaintiffs the right of election to keep the machine and sue for damages, or to return or offer to return same, and ask for a cancellation of their obligation. They chose the latter course, and the question is whether or not their conduct with reference to the machine was such as permitted them to use that remedy.

[4] The fact that it was not a new machine, as was originally represented to them, gave them no right to rescind, for the reason that it unmistakably appears from their testimony that they knew it was not a new machine when they took it, and they accepted it on the theory that it was not a new one. The right to rescind and to ask for a cancellation of their obligation depends upon the failure or refusal of defendant to perform the promises upon the faith of which plaintiffs testify they accepted the machinery.

[5] The testimony shows clearly that they kept and used the machine, after they knew that defendant would not perform the promises; and after they knew that defendant denied and repudiated the making of the promises they continued to use the machine under such circumstances until they abandoned it to its fate somewhere out in the country in Hale county. Admitting that such failure and refusal would give plaintiffs the right to rescind, it was nevertheless essential to such relief that upon discovery of the fact that the promises would not be performed to not only tender or offer to return the machine, but to hold to such position consistently, instead of, as they did in this case, proceeding with the use of the machine, recognizing the contract. Kempner v. Advance Thresher Co., and cases there cited, 118 S. W. 717; Grabenheimer v. Blum, 63 Tex. 369.

Appellees' position is that: "Plaintiffs merely tried out a proposed substitute under a special arrangement, the original contract being held in abeyance for the time to await the trial." This is not the case alleged in the petition, nor as made by the evidence. The case presented by the petition and made by the evidence was that plaintiffs accepted the machine in question as the one bought under a special contract; that it was to be used and made to work as good as a new one, and, if not, that defendant would give them a new one. If as soon as it was discovered that the one taken could not be made to answer said requirements, or that defendant would not do what it had agreed to do in order to make it as good as a new one, plaintiffs had the right to return it or offer to do so, and thereby demand a new one, and, if this was not forthcoming, to rescind the transaction.

The testimony was that soon after they got it and began using it they realized this and notified defendant by wire to send a man for the machine; that it was there for them. The reply they got by letter was practically a refusal to do so. Lunsford testified: "It wasn't what I bought, and I couldn't make it, according to the contract, as good as a new one." Also: "About that time—along about the 1st of April—I knew as much about the condition of that plow as I do now. About the 1st of April I knew the plow was no account, and these parts all wrong; I knew that along in April. * * * The day I went to plowing for Mr. Harp I knew it."

On April 26th plaintiffs had Attorney Barrett write a letter saying, among other things, that Elder had sold them a new plow outfit, representing that it had plowed only about 40 acres and hence was as good as new, for the aggregate sum of $4,500; that it was not as good as new, and is worth only about $2,000; that they had consulted attorneys and intended to bring suit against defendant at once unless defendant intended to put the machine in proper order, and to let them know what defendant was going to do about the matter. The answer to this letter was a refusal.

Again Lunsford testified: "I think I had a letter from Mr. Elder in June writing me for a list of what I wanted, stating that if he shipped it without a list he would just be guessing at it, and in reply to that letter I wrote him and told him that I would again send him another list, without any view whatever of getting any of the repairs, but I would send him another list as he requested, and I did so, and never got any repairs or answer to that letter either." This shows that he understood that no repairs would be furnished and understood previously to this that the promise to repair would not be fulfilled.

We are of opinion that under the circumstances developed by the testimony, it was error to allow plaintiffs a rescission.

The judgment is reversed, and judgment will be entered here, sustaining the first assignment of error which complains of the refusal of a peremptory instruction, denying the rescission and cancellation prayed for, and dissolving the injunction granted in the case, without prejudice, however, to any right of plaintiffs' other remedy or any defenses they may have against the notes.

Reversed and rendered.

### On Motion for Rehearing.

After considering the motion we adhere to what is held in the opinion delivered in this case, but conclude that the proper disposition of the case by this court is to reverse the judgment and remand the cause, instead of rendering judgment. That part of the judgment of this court will therefore be set aside and the judgment of the district court reversed and the cause remanded.