J. I. CASE THRESHING MACH. CO. v.
RACHAL. (No. 5798.)

(Court of Civil Appeals of Texas. San Antonio.
March 28, 1917. Rehearing Denied
April 25, 1917.)

1. SALES ☞130(3)—RESCISSION—EVIDENCE—
SUFFICIENCY.

In action for rescission of contract for sale
of automobile, evidence *held* to show that de-
fendant manufacturer, in accepting order from
his agent, had notice that the order was in be-
half of the purchaser, so as to entitle the pur-
chaser to rescind upon sufficient showing, and
recover the purchase price paid.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 323.]

2. APPEAL AND ERROR ☞930(1) — SCOPE OF
REVIEW—PRESUMPTIONS.

If doubt arises as to sufficiency of evidence,
it must be resolved in favor of the judgment, in
absence of request for the submission of the is-
sue affected.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3755, 3756, 3758.]

3. SALES ☞391(1) — RESCISSION — RIGHT TO
RESCIND—RECOVERY OF MONEY PAID.

Where the automobile manufacturer furnish-
ed blanks to agents and authorized them to sell
cars and collect the price, the blanks carrying a
notice of waiver of acceptance of orders, the
purchaser on breach of contract could recover
the price paid, either upon the theory that the
manufacturer was estopped to deny the con-
tract, or that he was absolutely entitled to such
recovery.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 1110, 1115, 1117, 1118, 1121.]

4. APPEAL AND ERROR ☞728(1) — SCOPE OF
REVIEW—ASSIGNMENTS OF ERROR.

A general assignment of error, pointing out
no particular testimony complained of, and not
supported by any statement, will not be con-
sidered.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 3010.]

5. APPEAL AND ERROR ☞728(2) — SCOPE OF
REVIEW—ASSIGNMENTS OF ERROR.

An assignment of error to the admission of
testimony which does not show what the testi-
mony was, but is referred to the statement un-
der several assignments, will not be considered.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 3011.]

6. SALES ☞130(3) — RESCISSION — RIGHT TO
RESCIND—LACHES.

Where the automobile purchaser used the
car for nearly a year constantly, complaining
that the clutch was defective so as to render
the machine worthless, and the manufacturer,
during a large part of the time, was attempting
to remedy the defects, the purchaser could not,
as a matter of law, be held to have waived the
right to rescind.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 323.]

7. APPEAL AND ERROR ☞173(12)—SCOPE OF
REVIEW—PRESERVATION OF EXCEPTIONS.

In action for recovery of price of automobile
and rescission of contract, the issue whether the
purchaser waived his right by making a subse-
quent agreement should have been raised by
request for submission thereof to the jury, and
could not, on appeal, be urged under an assign-
ment of waiver by delay.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1109, 1113.]

8. JUDGMENT ☞253(1) — AMOUNT OF DAM-
AGES.

In suit for recovery of $2,300 paid for an au-
tomobile, the judgment could not find that there
was no market value, where the plaintiff stated
in his plea that the automobile was worth $300.

[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 443, 444.]

Appeal from District Court, Brooks Coun-
ty; V. W. Taylor, Judge.

Action by F. S. Rachal against the J. I.
Case Threshing Machine Company. Judg-
ment for plaintiff, and defendant appeals.
Affirmed.

Bryan & Bryan, of Houston, for appellant.
Dougherty & Dougherty, B. D. Tarlton, Jr.,
and H. S. Bonham, all of Beeville, for appel-
lee.

MOURSUND, J. We adopt appellee's
statement of the nature of the pleadings, as
it is more complete than that of appellant:

"Appellee, F. S. Rachal, brought this suit
against the appellant, J. I. Case Threshing Ma-
chine Company, to rescind the contract of sale
of a certain automobile, alleged to have been
made by the appellant to the appellee. Appellee
based his suit upon the grounds that he was in-
duced to buy the car by false representations of
the appellant, and that the consideration for
the purchase wholly failed, and the sale was
voidable at his election. Appellee further al-
leged that the appellant expressly warranted
said car to be genuine and complete, and that it
combined to an unusual degree the details of
utility and beauty, and that it was a good and
serviceable car for the uses for which an auto-
mobile is ordinarily intended. Appellee alleged
that the representations that the car was com-
plete and genuine, and that it combined to an
unusual degree the details of utility and beauty,
were made by the appellant, through its duly
authorized agent, under express authority, which
said representations were contained in the cata-
logue and advertising matter distributed by the
appellant. Appellee alleged that at the time he
purchased said automobile he had little practical
knowledge about automobiles; that he relied
upon the representations of the appellant in
purchasing the said car; that he was thereby in-
duced to purchase same, and that, acting upon
these representations, on or about the 21st day
of August, 1913, he executed in Brooks county,
Tex., a written order for the purchase of a 40-
horse power, five-passenger touring car, manu-
factured by the appellant, J. I. Case Threshing
Machine Company, and known as the 'Case For-
ty'; that said order was duly accepted by the
appellant; and that, when accepted, it became
the contract of sale for said car. Appellee fur-
ther alleged that under the terms of said con-
tract the appellant expressly warranted the car
to be of the specifications and equipments as giv-
en in the catalogue, which catalogue was deliv-
ered by the appellant to appellee, and that the
said contract further warranted the car for one
year from the date of shipment from any defects
in material or workmanship. Appellee further
alleged that the said car was wholly unfit for
the purpose for which an automobile was ordi-
narily intended, and that the representations
made by the appellant, both before and at the
time he purchased said car, which were the in-
ducements for him to buy the car, and upon
which he relied, were in writing and were un-
true, and that the defendant either knew, or
ought to have known, that the said representa-
tions were untrue. Appellee further alleged
that upon the discovery of the defects in said

car, and after learning that the appellant could not or would not repair the same, he seasonably tendered the car back to the appellant, and demanded the return of the purchase money, to wit, $2,300, which he had paid for the same.

"Appellee alleged that the car as delivered to him failed to comply with the warranties, and that it was specially defective, in that the clutch of said car was defective, and prayed that, in the event he be not entitled to a rescission of the contract and recover for the purchase money paid for said car, he recover $2,000 upon the breach of the warranty, being the difference between the contract price and its actual value.

"Appellant filed its plea of privilege to be sued in the district court of Harris county, and also in its first amended original answer filed April 20, 1916, especially denied that it or any one acting for it had executed the contract, or accepted the contract or order of August 21, 1913, sued on by appellee, and also specially pleaded that the car in question had been sold to Thomas Ragland & Co. upon a written order and contract dated August 23, 1913, which had been rewritten as of November 4, 1913, and specially pleaded its customary course of business with all of its customers that the same was done upon printed blank forms, and that such orders were not binding on appellant until accepted by it at its home office at Racine, Wis., and that the contract or order of August 21, 1913, signed by appellee, had never been received by appellant, and that no contract relation had ever existed between appellant and appellee. The plea of privilege was considered with the case.

"By way of supplemental petition the appellee, in answer to the pleadings of the appellant, alleged that he had notice of the fact that the order as signed by him had not been sent in to the company, and that it was the duty of the agent, Ragland, either expressed or implied, to have so forwarded the contract to the appellant, and that the appellant actually knew that the car was sold to and intended for F. S. Rachal, and that they ratified and approved the conduct of their said agent, Ragland, and that they were estopped to deny the contract made by Ragland with the appellee on August 21, 1913; that said car was delivered by the appellant to the appellee as ordered in said contract, except as modified by agreement."

The case was submitted on special issues, which, with answers returned by the jury, are as follows:

"No. 1. Did the defendant sell the car in question to F. S. Rachal or Thomas Ragland & Co.? Answer: To F. S. Rachal.

"No. 2. Did the defendant, J. I. Case Threshing Machine Company, accept the order signed by F. S. Rachal and dated Falfurrias, Tex., August 21, 1912? Answer: Yes.

"No. 3. Did the defendant accept the order signed by Thomas Ragland & Co., and dated Corpus Christi, August 23, 1913, and the order dated November 4, 1913, at Houston? Answer: Accepted as duplicates of original order covering changes.

"No. 4. Was the automobile in question shipped by the defendant to plaintiff warranted by defendant to be a first-class car in all respects? Answer: Yes.

"No. 5. Was the car in question materially defective at the time of its delivery to plaintiff? Answer: Yes.

"No. 6. Was the car in question suitable for the purposes and uses for which an automobile is ordinarily intended? Answer: No.

"No. 7. If you have stated in answer to question No. 5 that the car was materially defective, were the material defects ever corrected by the defendant by replacing the defective parts? Answer: No.

"No. 8. If you answer question No. 7 in the negative, then answer: Did plaintiff disaffirm the sale of said car within a reasonable time after he found out, or by the exercise of ordinary diligence could have learned, that defendant could not or would not replace said defective parts referred to in question No. 7? Answer: Yes.

"No. 9. Did the defendant, J. I. Case Threshing Machine Company, with knowledge of all the facts with reference to the transaction between Thomas Ragland and plaintiff and the sale of the car to plaintiff, ratify and adopt the sale of said automobile made by Thomas Ragland & Co. to plaintiff, as the contract of defendant? Answer: Yes.

"No. 10. What was the reasonable market value of said car at Houston, Tex., at the time of its delivery to plaintiff, in the condition it was in when delivered? Answer: No market value.

"No. 11. What was the reasonable market value of said car at Falfurrias, Tex., at the time of its delivery to plaintiff, in the condition it was in when delivered? Answer: No market value.

"No. 12. If you have answered question No. 5 that the car in question at the time of its delivery was materially defective, then will you answer the following questions: (a) What would have been the reasonable market value of said car if it had not been materially defective at the time of its delivery to plaintiff in Houston, Tex.? Answer (a) 2300.00 and freight. (b) What would have been the reasonable market value of said car if it had not been materially defective at the time of its delivery to plaintiff in Falfurrias, Tex.? Answer (b): 2300.00 and freight."

Upon such verdict judgment was rendered, rescinding the contract of sale and in favor of appellee for $2,300, the price of the automobile, with interest at the rate of 6 per cent. per annum from November 4, 1913.

The first assignment complains of the refusal to give a peremptory instruction; the second, of the overruling of an objection to the entire charge, to the effect that no issue should be submitted because a peremptory instruction should be given to find for defendant; and the third, of the overruling of an objection to issues Nos. 1, 2, and 3, to the effect that the undisputed evidence showed that the car was sold by defendant to Ragland & Co., and that the defendant did not accept the Rachal contract of August 21, 1913, but did accept the orders of August 23 and November 4, 1913, signed by Ragland & Co. These assignments are grouped and, under the following propositions, are submitted:

"(1) The appellee, Rachal, not having alleged that he had ever authorized Thomas Ragland, or Thomas Ragland & Co., and F. L. Freeman to execute the order of August 23d, and the order of November 4th, for the automobile, and the evidence of appellee showing that he knew nothing of said orders and contracts of August 23d and November 4th, upon which the car was actually shipped, it was therefore clear that appellee never became bound to appellant in any manner upon the order, or contract, sued on, dated August 21, 1913, and that the appellant at no time could have held the appellee upon the order of August 21, or of August 23, or of November 4, 1913, and that, therefore, there never was any mutuality of obligation, and never was any meeting of the minds of appellant and appellee, and no contractual relation ever existed between them, and therefore the court should have peremptorily instructed the jury to return a verdict for appellant.

"(2) Appellant having given its warranties as

to the car to Thomas Ragland & Co., the appellee could not recover on such warranties as they were not made to him."

[1] Thomas Ragland & Co. were local dealers in products of the Case Company, and F. L. Freeman was a salesman for said company. Each had authority to receive orders for automobiles upon the printed order blanks furnished by the company, and it was their duty to transmit such orders to the company. Appellee, Rachal, on August 21, 1913, signed and delivered to Thomas Ragland and Freeman an order upon one of said blanks for a Case 40, five-passenger automobile, for which he bound himself to pay $2,300 besides freight charges from the factory. The order provided that the company assumed no liability for nonshipment, and that the purchaser waived notice of the acceptance of the order. On the margin of the order the statement was made that salesmen and dealers were not authorized to bind the company by any act, contract, or statement, and that no branch house manager, salesman, or local dealer, unless authorized in writing by an officer of the company, has any authority to waive, alter, or enlarge the contract, or to make any new, or substitute, or different, contract, representation, or warranty. Ragland and Freeman did not send the order to the company, but retained the same, and on August 23, 1913, sent in an order on a similar blank by Ragland & Co. themselves, and on November 4, 1913, wishing to make some changes at the request of Rachal, executed and delivered to the manager of the branch house of the company at Houston a substitute order. Rachal had no knowledge of the execution of these two orders, or that his order had not been transmitted to the company and accepted, and was under the impression that his order had been accepted and changes afterwards made at his request without changing the order or executing a new one. The car was shipped to the Houston office for Ragland & Co., and while it was there Rachal asked to see his car, and the car afterwards received by him was shown him. Several days later Ragland had the car shipped to Rachal. Rachal had sold Ragland cattle for a price exceeding the price of the car, and Ragland retained a sufficient sum to pay for the car, and paid Rachal the remainder. Rachal's order required him to pay for the car in money, and he did so as above stated. Ragland, who had authority to collect the money, paid the same to the company. Freeman testified that he wrote a letter to the branch office at Houston, to which he sent the Ragland & Co. order, in which he explained just how the deal was with regard to Rachal, and that he also later on, in a conversation with the manager of the branch office in which they discussed the matter, again acquainted the manager with the conditions in regard to the sale of the car. This was denied by appellant's witnesses, but must be accepted as true, in deference

to the verdict. It appears that it was the duty of the branch office to send in all orders to the home office at Racine, and it would naturally follow that all letters explaining orders would take the same course, so that the company would have all proper information at hand in considering whether to accept the order. Freeman testified to a circumstance tending to show that the home office had knowledge that the car was bought by Rachal. The car was to be gray, with white stripes and tread, and Freeman received notice that the company objected to this because it cost more, and wanted to substitute a brown car. He submitted this proposition to Rachal, but Rachal's wife and daughters objected to the change. Thereupon he notified the Houston office, and afterwards received notice that the reply came from the company at Racine, to the effect that if a man was so particular, the car would cost $50 extra, and they did not care whether they sold it. Freeman then notified them that Rachal wanted the car for his daughters, who wanted that color, and then the company replied that out of respect for the ladies, they would go ahead and furnish the car. We believe this testimony supports a finding that the company knew the facts, and in accepting and filling Ragland's order accepted and filled Rachal's order.

[2, 3] However, should we be mistaken in this, it does not follow that Rachal would not be entitled to recover in this suit. While the company claims that it had no contract with Rachal, the latter had no contract with any one unless it was with the company, for he intended to contract with the company, and believed he had done so. If there could be any doubt of Rachal's want of knowledge that his order had not been received by the company and accepted, it would have to be resolved in favor of the judgment, no request having been made for the submission of the issue, but the testimony is really undisputed to that effect. Now, it occurs to us that the company cannot say to Rachal that he had a contract with its agents and not with it, without subjecting itself to a suit by him to recover the money parted with by him under the belief that he had a contract with the company. The agents were acting within the scope of their authority in receiving the order and in collecting the money, and the company, by making the prospective purchaser waive notice of its acceptance of his order, placed it within the power of its agents to secure from Rachal the $2,300 under the belief on his part that he had a contract with the Case Company, upon which he could rely. Under the circumstances Rachal is either entitled to recover the money so obtained from him upon tendering back the car, or at least it must be held that the company is estopped from claiming that Rachal has no contract with it. We, therefore, overrule said assignments of error.

Assignments 4, 5, 6, and 7 are overruled. The evidence was admissible to show how it came about that Rachal received a car without his order reaching the company at Racine, and to explain how it came about that the changes desired by him were made.

[4] The eighth assignment is too general. It points out no particular testimony complained of. It is not supported by any statement. The assignment will not be considered.

[5] The ninth assignment complains of permitting Rachal and Ragland to testify concerning the acts and statements of defendant's expert, John Woolson, because the effect of such testimony was to vary and contradict the express terms of the written contract sued upon by plaintiff. The statement does not show what the testimony was. We are referred to the statement, under the first three assignments, which contains practically all of the testimony in the case. This is not a compliance with the rules. No bill of exceptions is referred to, but upon examining the bill in the record, we find it is as general as the assignment and refers to the statement of facts for the evidence. The assignment will not be considered.

[6] By the tenth assignment it is contended that issue No. 10 should not have been submitted, and by the eleventh that the answer of the jury to said issue is unsupported by evidence. The evidence supports a finding that the clutch on the car was not as represented in the catalogue, and that its defects were so great that the car was rendered practically useless, and that, complaint being made by Rachal to appellant's agents, they made various efforts to correct the defect, and during the latter part of July, 1914, John Woolson, an expert employed by appellant, was sent by appellant to work on the car, and after 16 days' delay waiting for parts for the car, he spent three days putting in a new clutch. This clutch was also defective. Rachal testified he tendered the car back on October 29, 1914, as soon as he became convinced that the defects would not be remedied, and that he did not thereafter use the car, and has ever since held it subject to appellant's order. Appellee did not undertake to rescind until just about a year after he received the car, but it is clear that until Woolson got through with it, about August 15, 1914, he was led to believe that the defects could be and would be remedied, and in fact he was never told that he would have to retain the car with a defective clutch, but finally despaired of getting appellant to remedy the defect, and refused to wait longer. The defect was one which rendered the car practically worthless, and yet one which apparently should have been easily remedied, and he could not be blamed for believing that the company would be able to remedy the same. He gave appellant's agent every opportunity to remedy the defect, and it was in their possession a great deal of the time.

The automobile would run fairly well at times, and then again the clutch would slip continually, rendering it absolutely unfit for use. We do not believe that it can be held as a matter of law that appellee, by reason of his delay, waived his right to rescind. Hubbs v. Marshall, 175 S. W. 716; Houston Motor Car Co. v. Brashear, 158 S. W. 233; Geiser Mfg. Co. v. Lunsford, 139 S. W. 64. The only objection made to the submission of the issue was that the undisputed evidence shows that plaintiff kept and used the car for nearly a year after he discovered, or by the use of ordinary diligence could have discovered, that it was not according to contract, as claimed by him, and that he thereby waived the right to disaffirm the contract.

[7] Appellant undertakes in the eleventh assignment to raise the issue that appellee was precluded from disaffirming the contract on the ground that he made an agreement with Ragland whereby he delivered the car to Ragland to be sold by Ragland, and a new car was to be furnished him by Ragland. No objection was made to question No. 8 on this ground, and we may take it as admitted that plaintiff disaffirmed the contract, for the only issue made was as to the reasonableness of the time in which he did so. It appears to us that appellant is precluded from contending under this assignment that in fact appellee waived his right to disaffirm, not by delay, but by reason of making an agreement with Ragland whereby he delivered the car to Ragland to be sold by the latter, who was to furnish appellee with a new car. The issue sought to be raised should have been raised by request for submission thereof to the jury, but this was not done, and appellant cannot now urge it under an assignment to which it is not germane. We do not wish to be understood, however, as agreeing with appellant in his construction of the testimony. As we construe it, after appellee made his last complaint to Ragland and Freeman with regard to the car, they came to his place and took the car to Premont, saying they were going to sell it and give him a new car. Appellee, not knowing that appellant was going to claim that it had no contract with him, permitted appellant's agent to take possession of the car, and had no intention of making a trade with them, but merely to turn back the car to appellant. There is no testimony tending to show that the car is not in appellant's possession. The judgment vests the title thereto in appellant. Assignments 10 and 11 are overruled.

In view of what we have said in considering the first three assignments, the twelfth assignment presents an immaterial matter, and will be overruled.

The thirteenth assignment complains of the verdict and judgment as being unsupported by the evidence. Every finding of the jury, except the fourth, is attacked. The matters relating to the first, second, third and eighth

issues have been disposed of, and we have held that such findings are supported by the evidence. The fifth, sixth, and seventh answers are supported by the evidence. We are unable to determine what is meant by the ninth issue, unless it was intended to inquire into the facts pleaded by plaintiff in paragraph 3 of his supplemental petition, namely, that defendant knew before the car left its possession that it was in fact purchased by Rachal and intended for him. These facts have already been found by us. The tenth, eleventh, and twelfth issues and their answers are immaterial on the issue of' rescission. If it were held that the right to rescind was lost, they would be material. Said findings are supported by the evidence.

[8] However, we fail to see how the finding of no market value for the car could, on the issue of damages, if rescission could not be had, be held to authorize a judgment in favor of plaintiff for $2,300, in view of the statement in his prayer that the automobile was worth $300. The jury found in answer to a special issue submitted by defendant that the car was defective in the clutch. Even this finding is attacked, although supported by the undisputed evidence. The assignment is overruled.

The fourteenth assignment relates to the plea of privilege, and is presented on the theory that the plea should be sustained if appellant's contentions under the first three assignments are held to be correct. Having overruled such contention, it follows that this assignment must be overruled.

The judgment is affirmed.